UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEF GORRES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF RHODE ISLAND,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 04-319-T |

**UNIVERSITY OF RHODE ISLAND'S MOTION FOR SUMMARY JUDGMENT**

The University of Rhode Island hereby moves, pursuant to Rule 56, Fed. R. Civ. Proc., that Summary Judgment enter in its favor as to all Counts in the Complaint.

In support of this Motion, the Court is respectfully referred to the Memorandum in Support of University of Rhode Island's Motion for Summary Judgment and University of Rhode Island's Statement of Undisputed Facts, filed together with this Motion.

Respectfully submitted,
The University of Rhode Island,
By its attorneys,

Jeffrey S. Michaelson, Esq. (#3299)
Michaelson & Michaelson
P.O. Box 622
7454 Post Road
North Kingstown, R.I. 02852
Telephone: (401) 295-4330
Facsimile: (401) 295-4330

Timothy J. Dodd, Esq. (#3150)
215 Broadway
Providence, R.I. 02903
Telephone: (401)272-3900
Facsimile: (401)331-1440

October 7, 2005

**CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing document was mailed, by regular mail, postage prepaid, on this 7 day of Oct., 2005, to the following attorney(s) of record:

David S. Cass
194 Waterman Street
Providence, R.I. 02906

[signature]

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEF GORRES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF RHODE ISLAND,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 04-319-T |

**MEMORANDUM IN SUPPORT OF UNIVERSITY OF RHODE ISLAND'S MOTION FOR SUMMARY JUDGMENT**

Jeffrey S. Michaelson, Esq. (#3299)
Michaelson & Michaelson
P.O. Box 622
7454 Post Road
North Kingstown, R.I. 02852
Telephone: (401) 295-4330
Facsimile: (401) 295-5220

Timothy J. Dodd (gr)
Timothy J. Dodd, Esq. (#3150)
215 Broadway
Providence, R.I. 02903
Telephone: (401)272-3900
Facsimile: (401)331-1440

October 7, 2005

**TABLE OF CONTENTS**

PLEADINGS . . . . . . . . . . 1

DESCRIPTION OF MOTION . . . . . . . . . . 2

FACTS . . . . . . . . . . 2

ISSUE PRESENTED . . . . . . . . . . 4

POINTS AND AUTHORITIES . . . . . . . . . . 4

A. Summary Judgment Standard . . . . . . . . . . 4

B. Legal Framework For Proof Of Discrimination . . . . . . . . . . 5

C. Plaintiff Cannot Establish A *Prima Facie* Case . . . . . . . . . . 6

D. The Offer To A More Qualified Candidate Defeats Plaintiff's Claims . . . . . . . . . 7

E. URI Has Articulated A Non-Discriminatory Reason For Its' Decision . . . . . . . . . 8

F. Plaintiff Cannot, As A Matter Of Law, Prove Pretext . . . . . . . . . . 8

G. There Is No Legally Sufficient Direct Evidence Of Discrimination . . . . . . . . . . 9

H. U.R.I. Is Not A Viable Defendant . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . 14

TABLE OF CASES . . . . . . . . . . i

STATUTES CITED . . . . . . . . . . iii

**PLEADINGS**

The Complaint in this matter is filed on behalf of Plaintiff, Josef Gorres, against Defendant "The University of Rhode Island" ("URI" or "the University").[1]

The Complaint, generally, alleges unlawful discrimination arising from Plaintiff's unsuccessful application for a tenure-track position at the University of Rhode Island. Complaint, Par. 7-27. Plaintiff alleges that the University's failure to offer him the position after the job was declined by another applicant, a younger (than Plaintiff) female, constituted unlawful discrimination. Complaint, Counts I-III. Plaintiff alleges that he was ranked second of three 'finalists' who were given on-campus personal interviews. Complaint, Par. 18.

Plaintiff's allegations include:

COUNT I: Unlawful refusal to hire based upon gender, age and nationality, R.I. Fair Employment Practices Act ("FEPA"), R.I.G.L. 28-5-1, *et seq.*

COUNT II: Unlawful refusal to hire based upon gender, age and nationality R.I. Civil Rights Act ("CRA"), R.I.G.L. 42-112-1, *et seq.*

COUNT III: Unlawful refusal to hire based upon Age, Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*

COUNT IV: Unlawful refusal to hire based on gender and nationality, Title VII, 42 U.S.C. §2000e, *et seq.*

URI answered the Complaint, denying the allegation of discrimination. In addition, the University raised a variety of Affirmative Defenses, including that the University of Rhode Island is not an entity which may be sued and that Plaintiff failed to exhaust administrative remedies.

---

[1] There is currently pending a Motion to Amend the Complaint to add the R.I. Board of Governors for Higher Education as a defendant. The allegations of the Complaint, otherwise, are unchanged in the proposed Amended Complaint.

## DESCRIPTION OF MOTION

The University of Rhode Island seeks Summary Judgment, pursuant to Rule 56, Fed. R. Civ. Proc., on all claims in this matter.

## FACTS

This matter arises from Plaintiff, Josef Gorres' unsuccessful application for a tenure-track position as a Professor of Terrestrial Biogeochemistry at the University of Rhode Island. Under the University's search procedure, both the search committee and the Dean can end the process by declining to recommend one or more applicants to the next level. The search committee can recommend ending the search or it can forward its recommendations to the Dean for hiring consideration. The Dean can accept or reject the recommendations of the search committee in whole or in part. If the Dean approves the recommended appointment he/she will, in turn, recommend the appointment to the Provost. On the other hand, if the Dean rejects the recommendations of the search committee, the search will be ended.

In this case, the matter was assigned to a Search Committee, the University advertised the position, and a variety of individuals applied for the position. Among these was Plaintiff, Joseph Gorres, a male who was over 40 years old at the time of the search which forms the basis of his complaint. Gorres is of German extraction. Gorres came to the University of Rhode Island in 1992 as a lecturer and per course instructor and, at the time of his application for the position at issue, was a Research Associate Professor (non-tenure track).

Among the other applicants was a woman, Emily Bernhardt. Plaintiff and Dr. Bernhardt were among those selected for telephone interviews. Following the telephone interviews, the three candidates ranked highest by the Search Committee were granted personal interviews. Professor Gorres, Bernhardt and one other male applicant were interviewed on campus.

During the course of discussing Plaintiff's training and experience, which includes many international references, one of the members of the Search Committee, Dennis Nixon, Associate Dean for Academic Affairs in the College of Environment and Life Sciences, asked, according to Plaintiff, if Gorres was a citizen of the world, or a U.S. Citizen. Following this exchange, Gorres sent an email to the Chair of the Search Committee expressing concern about this comment/question.

Upon completion of personal interviews, the Search Committee selected Dr. Bernhardt for the position, using the standard URI form and specifying their reasons that the other two personal interviewees were not selected. In Plaintiff's case, he was not selected because he lacked research experience in plant-soil/landscape interactions.

The recommendation of the Search Committee was forwarded to the Dean of the College of Environment and Life Sciences, Jeffrey Seemann, who determined that a job offer to Bernhardt was appropriate. Dean Seemann therefore forwarded the recommendation to the Provost, consistent with University procedure. The Provost decided that the position should be offered to Dr. Bernhardt.

Following the offer to Dr. Bernhardt, and while she was considering it, Plaintiff claims that Dean Seemann made a number of comments at a Natural Resource Sciences Department meeting in March of 2003. These comments included: the positive benefits of having a woman join the faculty; that having a spousal hire policy would help attract faculty and, particularly so, where URI was trying to be competitive in convincing a highly qualified female to accept a job offer; that diversity is a positive factor in the Department; that a tenure track faculty of all white men is not diverse; that someone was a "bright, young guy"; that someone was a "bright, young mind"; and that "young scientists" need mentoring. Plaintiff also alleges that, at the same meeting, Professor Roheim stated that it would be good for the students to have a female tenured professor.

Ultimately, Bernhardt turned down the job offer at URI. The search was not continued and

no further offer was made to any other candidate. Dean Seemann indicates that the decision not to continue the search and the reason no offer was made to Plaintiff was the result of Dean Seemann's conclusion that Plaintiff did not have the qualifications for the position. Specifically, Dean Seemann felt that Plaintiff's caliber as a research scientist was not at the level he was looking for and that Plaintiff's research, being "intertwined" with the research of other existing faculty, would not bring sufficient diversity to the Department. Dean Seemann was seeking faculty who could increase the national stature, recognition and accomplishments of the University, and he concluded that offering the position to Plaintiff would not achieve that goal.

Plaintiff initiated charges before the Rhode Island Commission for Human Rights alleging gender, age and national origin discrimination pursuant to state and federal law. He obtained Right to Sue letters. The Charge of Discrimination was against the "University of Rhode Island." Suit was thereafter commenced, also against the "University of Rhode Island."

## ISSUE PRESENTED

Taking the undisputed facts in the light most favorable to Plaintiff, is Defendant entitled to Judgment as a matter of law?

## POINTS AND AUTHORITIES

### A. Summary Judgment Standard

Rule 56, Fed. R. Civ. Proc. provides that judgment should enter if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In assessing a Rule 56 Motion, evidence is viewed and all reasonable inferences are made in the light most favorable to the non-moving party. *Rosenberg v. City of Everett*, 328 F.3d 12, 17 (1st Cir. 2003); *Rosenfeld v. Egy*, 346 F.3D 11 (1st Cir. 2003). Those inferences do have their

limits: "Summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation.... And summary judgment can be entered even where ambiguous, often murky concepts such as motive and intent are involved, as in the employment discrimination context." *Ingram v Brink's, Inc.*, 414 F.3d 222, 228-229 (1st Cir. 2005)(citations omitted).[2]

B. Legal Framework For Proof Of Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000e-2(a)(1). The Age Discrimination in Employment Act, 29 U.S.C. § 629, *et seq.* extends protection to workers over age forty from employment actions motivated by age. The Rhode Island Fair Employment Practices Act, R.I.G.L. 28-5-1, *et seq.* and Civil Rights Act, R.I.G.L. 42-112-1, *et seq.* extend like protection.

The analytical framework for determining whether discrimination has occurred depends upon whether there is "direct" evidence of discrimination, as that term of art is defined, or not. If not, the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) applies. *See also*, *Hall v. Grand Foods, Inc.*, 175 F.3d 1074, 1077)(D.C. Cir. 1999)(same for ADEA); *Center for Behavioral Health, R.I., Inc. v. Barros*, 710 A.2d 580 (R.I. 1998)(same for R.I. FEPA); *DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13(R.I. 2005)(same for R.I. CRA, FEPA).

In brief, the *McDonnell Douglas* framework is as follows: First, the plaintiff has the burden

---

[2] *E.g.*, *Vesprini v Shaw Contract Flooring Services, Inc.*, 315 F.3d 37 (1st Cir. 2002)(summary judgment affirmed in employment discrimination case where evidence insufficient to establish "direct" evidence of discrimination); *Ronda-Perez v. Banco Bilbao Vizcaya Argentaria,* 404 F.3d 42 (1st Cir. 2005)(summary judgment affirmed in employment discrimination case where Plaintiff could not produce a reasonable inference sufficient to defeat employer's stated reason for employment action).

of proving a *prima facie* case of discrimination. Second, if the plaintiff succeeds, the defendant has the burden of production, that is, articulating some legitimate, nondiscriminatory reason for the employee's rejection. Third, if the defendant provides evidence of such a reason, the plaintiff must prove that the reason offered by the defendant is, in fact, a pretext for discrimination. *Id.* at 801-804. *Burdine*, 450 U.S. at 252-253.[3]

C. Plaintiff Cannot Establish A *Prima Facie* Case

The elements of a *prima facie* case of discrimination in a failure to hire case include the following: (1) Plaintiff is a member of a protected class[4]; (2) Plaintiff applied for an open position; (3) Plaintiff was not selected; and (4) after rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. 411 U.S. at 802.[5] *St. Mary's*

---

[3] *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167 (D.R.I. 1991) addressed the applicability of the *McDonnell Douglas* framework to summary judgment motions in discrimination cases. *Gannon* found that Summary Judgment in favor of a Defendant in such a case should only be granted "if a party does not carry his initial burden of production." *Gannon*, 777 F. Supp. at 170. While Defendant believes that this premise overstates a Defendant's burden in seeking Summary Judgment, U.R.I. believes that, in this case, Plaintiff cannot, as a matter of law, demonstrate even a *prima facie* case of discrimination on the undisputed facts.

[4] In a reverse discrimination case, membership in a protected class has proved a problematic element. Courts have modified the *McDonnell Douglas* framework (*e.g. Mitchell v. City of Wichita*, ___ F.3d ___, (slip op. 04-3199)(10th Cir. 2005)), to permit the non-minority plaintiff to satisfy this element if there is some other indicia of potential discrimination. In this District, in *Eastridge v. R.I. College*, 996 F.Supp. 161 (D.R.I. 1998), the Court effectively discarded the *McDonnell Douglas* framework in a reverse discrimination case. Respectfully, the *Eastridge* analysis, while thoughtful, does not do true justice to the United States Supreme Court's and First Circuit's consistent and steadfast (albeit flexible) adherence to the *McDonnell Douglas* analysis.

[5] Hiring another individual at the time of the rejection also satisfies the fourth element. In *Gu v. Boston Police Department*, 312 F.3d 6 (1st Cir. 2002), the four elements have been alternatively stated (as the facts may indicate): (1) Plaintiff is a member of a protected class; (2) Plaintiff applied for an open position; (3) Plaintiff was not selected; and (4) *the employer filled the position by hiring another individual with similar qualifications*. *Gu*, 312 F.3d at 11, *citing Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000); *Wynn & Wynn P.C. v. Mass. Comm'n Against Discrimination*, 729 N.E.2d 1068, 1078, n.22 (Mass. 2000). In "pool hiring" cases, this modification respects *McDonnell Douglas*, while

*Honor Center. V. Hicks*, 509 U.S. 502, 506 (1993).

D. The Offer To A More Qualified Candidate Defeats Plaintiff's Claims

In this case, there is no dispute that Dr. Berhnardt was a more qualified candidate. When the job was offered to Bernhardt, Plaintiff was "not selected," and, from that moment on, URI did not seek applicants from persons of Plaintiff's qualifications.

Where a position is offered to a *more* qualified candidate, the Court need go no further, as this fact, by itself, defeats a claim of discrimination by the non-selected candidate. *See Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 246 (1981)(employer has discretion to choose among equally qualified candidates). Since the employer can select among equally qualified candidates, a decision to hire a more qualified candidate cannot support a claim of discrimination. *See Gu*, 312 F.3d 6 (1st Cir. 2002)(fourth element may be satisfied by offer to person with *similar* qualifications); *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139 (D.C. Cir. 2004)(lack of evidence that position remained open or was filled by person of plaintiff's qualification level or lower fails to establish *prima facie* case).

To the best of URI's knowledge, no 'second place' finisher has ever established, as a matter of law, entitlement to a position where the chosen applicant declines and the employer did not thereafter seek to fill the position.

Thus, considering the undisputed facts, the fourth element of a *prima facie* case cannot be established. Here, the position was not filled. The job was not offered to anyone. No *prima facie* case can be established.

---

recognizing that such a scenario would, otherwise, preclude meeting the fourth element of a *prima facie* case.

E. URI Has Articulated A Non-Discriminatory Reason For Its' Decision

URI's Dean Seemann testified that he did not find Plaintiff to be sufficiently qualified for the position. URI's burden, in this respect, is only that of production and, having produced, Plaintiff has the burden of proving that the proffered non-discriminatory reason is pretextual in nature.

F. Plaintiff Cannot, As A Matter Of Law, Prove Pretext

In order to prove that URI's proffered reason for not offering Plaintiff the position was pretextual, Plaintiff would necessarily have to prove that he was qualified for the position. Unlike many employment venues, great respect and deference is given to institutions of higher education to set their own standards and aspirations in establishing job requirements and considering applicants against those standards. *Villanueva v. Wellesley Coll.*, 930 F.2d 124, 129 (1st Cir. 1990)(Court not appropriately tasked to sit as a sort of "super-tenure" committee); *Compare Rossy v. Roche Prods., Inc.*, 880 F.2d 621, 625 (1st Cir. 1989)("Our role is not to second-guess the business decisions of an employer, imposing our subjective judgments of which person would best fulfill the responsibilities of a certain job."); *See also Lieberman v. Gant*, 630 F.2d 60 (2d Cir. 1980).

In this case, if there were clear, objective criteria to judge a candidate's qualification, there would be no need for a search committee, likely no need for telephone or personal interviews and certainly no multi-level review before any hiring could occur. The hiring process amply demonstrates that the position at issue was subject to the legitimate, subjective determination of appropriate URI personnel as to which candidate, if any, furthered the University's academic mission.

Even if he could establish a *prima facie* case of discrimination, Plaintiff cannot, as a matter of law, prove that he was qualified for the position. Therefore, his discrimination claims must fail.

G. There Is No Legally Sufficient Direct Evidence Of Discrimination

It is anticipated that Plaintiff will seek to avoid the entire *McDonnell Douglas* analysis by reference to remarks made during and after the search process. *See U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711 (1983).

The University anticipates that Plaintiff will point to the following as direct evidence of discrimination: positive references to Dr. Bernhardt being a woman, apparently positive references to "young" people/minds/scientists,[6] a variety of references to the pros of diversity and the cons of a lack of diversity and an offhand question about citizenship.

The First Circuit has recognized that an overly broad definition of 'direct evidence' would effectively swallow the entire *McDonnell Douglas* analysis. *Fernandes v. Costa Brothers Masonry, Inc.*,199 F.3d 572 (1st Cir. 1999). To avoid the *McDonnell Douglas* framework, the Plaintiff must "demonstrate with a high degree of assurance that the employment decision of which he complains was the product of a mixture of legitimate and illegitimate motives." *Fernandes*, 199 F.3d at 581, *citing Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Although the First Circuit has been loathe to bind itself to an inflexible rule, it has recognized *(See, Fernandes, supra)* that evidence which might arguably constitute direct evidence has been handled in a variety of ways by other Courts. In *Ayala-Gerena v. Bristol Myers-Squibb*, 95 F.3d 86 (1st Cir. 1996)(which predated *Fernandes*, but post-dated *Price Waterhouse*) the First Circuit noted that, while it is not always clear what *is* direct evidence, it can be clear, even at the Summary Judgment stage, that some evidence is *not* direct evidence of discrimination.

The Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 123 S.Ct. 2148 (2003), makes

---

[6] Although the observation that "young" scientists need mentoring could, URI supposes, be viewed as a comparative negative.

it clear that, in this context, "direct" evidence does not exclude "circumstantial" evidence. However, the Eighth Circuit, in *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004), notes that *Desert Palace* does not relieve a plaintiff of making a showing, circumstantial or not, of a "specific link between the alleged discriminatory animus and the challenged decision." The *Griffith* Court found nothing inconsistent with *Desert Palace* in the definition of 'direct' evidence as "not the converse of circumstantial evidence," but, rather, as describing "the causal strength of the proof." 387 F.3d at 736:

> A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext. *See, e.g., Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 971 (8th Cir. 1994). This formulation is entirely consistent with *Desert Palace*. Thus, we conclude that *Desert Palace* had no impact on prior Eighth Circuit summary judgment decisions.

Respectfully, URI believes that the *Griffith* Court's analysis is appropriate insofar as it respects both *Desert Palace* and *McDonnell Douglas*.

In *Ayala-Gerena*, the First Circuit stated that "we do know that, at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by nondecisionmakers or statements made by decisionmakers unrelated to the decisional process itself." 95 F.3d at 96.

Without adopting a bright line test, the First Circuit has described what *is* direct evidence of discrimination: "evidence is 'direct' . . . when it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57 (1st Cir. 2000)(*citing Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*), *cert. denied*, 120 S. Ct. 1243 (2000); *Lambert v.*

*Ackerly*, 180 F.3d 997, 1008-09 (9th Cir.) (*en banc*), *cert. denied*, 120 S. Ct. 936 (1999); *Thomas v. NFL Players Ass'n*, 131 F.3d 198, 204 (D.C. Cir. 1997)).

Notably, in *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572 (1st Cir. 1999), the Court stated that, whatever test Courts employ, the very kind of innocuous statements which Plaintiff asserts here do not constitute direct evidence:

> Courts that take the classic position have contrasted direct evidence with, *inter alia*, ambiguous statements, and have indicated that the latter will not suffice. *See Maldonado v. U.S. Bank*, 186 F.3d 759, 763 (7th Cir. 1999); *Troupe*, 20 F.3d at 736-37. Courts that take either the animus plus or animus position place great emphasis on the strength of the proof of discriminatory animus. *See, e.g., Fuller v. Phipps*, 67 F.3d 1137, 1142-43 (4th Cir. 1995); *Thomas*, 131 F.3d at 204; *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 122 (2d Cir. 1997); *Ostrowski*, 968 F.2d at 182. **In our judgment, inherently ambiguous statements, without more, cannot supply the strong evidence that these courts rightfully demand as a prerequisite to mixed-motive analysis. We conclude, therefore, that a statement that plausibly can be interpreted two different ways - one discriminatory and the other benign - does not directly reflect illegal animus and, thus, does not constitute direct evidence.** *See, e.g., Carter*, 132 F.3d at 641 (We have held that statements that are open to more than one interpretation do not constitute direct evidence of racial discrimination.); *Troupe*, 20 F.3d at 736-37 (similar).

*Fernandes*, 199 F.3d at 583 (emphasis added).

In this case, it is hard to conceive of the comment at the personal interview, regarding citizenship, as evidence of discrimination under any circumstances. The innocuous query regarding citizenship was entirely benign and hardly qualifies as the kind of remark which could demonstrate with a high degree of assurance that any employment decision was the result of discrimination. The comment attributed to Dean Nixon was, if anything, a "stray remark" and not of a quality which rises to the level of direct evidence of discrimination against Plaintiff.

Furthermore, the Search Committee selected Dr. Bernhardt for the position, and Plaintiff does not disagree with that choice. Dean Nixon, the Search Committee member who asked the question about citizenship was not the decisionmaker in the subsequent decisions regarding the position,

which are the only decisions at issue in this case.

The second group of comments likewise fails the 'test' that would establish direct evidence of discrimination. These comments came *after* the position was offered to Berhnardt. Furthermore, Plaintiff does not allege that the decision to offer the position to Berhnardt constituted discrimination against him. These two undisputed facts make it clear that, as of the time these comments were made, the more qualified (than Plaintiff) candidate, who had been offered the position, happened to be a young woman. Thus, as of the date of the meeting where the comments were made, Plaintiff had not been offered the job and had not been discriminated against.

Plaintiff's evident theory in this case is that, *if he were a woman, not German, and under age 40*, and *with his qualifications*, he would have been offered the job after Dr. Bernhardt declined. This theory presents, URI submits, an insurmountable evidentiary hurdle for Plaintiff. Even assuming that there was a job to be offered after Bernhardt declined, URI respectfully submits that an observation that it would be nice to have a woman on the faculty, admiration for bright, young minds and a nod to the value of diversity could not, as a matter of law, "demonstrate with a high degree of assurance that the employment decision of which he complains 'was the product of a mixture of legitimate and illegitimate motives.'" *Fernandes*, 199 F.3d at 580, *quoting Price Waterhouse.*

It is hard to even classify the statements as ambiguous, as one has to look very hard, through a litigious eye, to see *any* possible discriminatory meaning in a passing question regarding citizenship, happiness over the fact that a bright young woman might join the faculty and an observation, in colloquial terms, that it will be nice to have some diversity. At the very *worst*, the

comments are ambiguous, thus not qualifying as direct evidence of discriminatory intent.[7]

There is absolutely nothing in these innocuous comments which could support a *reasonable* inference that discrimination against Plaintiff existed or played a role in his not being offered the position after Bernhardt declined. If, in fact, URI was bound and determined to hire a woman for the position, query why it did not continue its search and fill the position? This is the very reason that a *prima facie* case requires a showing that the employer continued to seek to fill the position – if not, a plaintiff cannot *prove*, as a matter of law, that her or she was the victim of discrimination.

In sum, while Rule 56 gives Plaintiff the benefit of all reasonably inferences as to what happened, the requirements set by the Supreme Court in *Price Waterhouse* to trigger mixed-motive analysis and, in the process, sideline the *McDonnell Douglas* analysis, are still not met in this case.[8]

---

[7] Contrast these comments with, the following scenarios cited in *Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.*, 399 F.3d 52 (1st Cir. 2005)(all parentheticals from *Rodriguez*): *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000) (comments by a supervisor questioning whether a woman could work and raise children made within two weeks of the female employee's termination was sufficient to create a jury question on a gender discrimination claim); *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 588-89 (1st Cir. 1999) (statements by a business owner that "I don't need minorities" and "I don't have to hire . . . Cape Verdean people" was sufficient to establish a viable Title VII claim), *abrogated on other grounds, Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Mulero-Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 675-76 (1st Cir. 1996) (statement by a person able to influence the decisionmaker that the plaintiff was the only Puerto Rican running a Cuban company was sufficient to create a triable issue of national origin discrimination). *Rodriguez*, 399 F.3d at 60. In *Rodriguez*, Plaintiff alleged that her supervisor, who was the decisionmaker, stated that "women 'were good for nothing'", that he "wanted to have male employees," called the Plaintiff an "old woman" and said that "men do their work better than women." *Id.*

[8] This matter differs in important respects from *Eastridge v. Rhode Island College,* 996 F.Supp. 161 (D.R.I. 1998). In *Eastridge*, a Search Committee rated two applicants equally, lamented that it could not hire both, and opted for the minority candidate as an affirmative action plus. 996 F.Supp. at 163-64. When the chosen candidate declined, the position was closed and not offered to the Plaintiff, a non-minority candidate. 996 F.Supp. at 164. Under these circumstances, the Court denied Summary Judgment. However, even accepting, *arguendo*, the *Eastridge* court's analysis, URI submits that the differences between *Eastridge* and this case, are dispositive: Plaintiff here was *not* equally qualified to the candidate offered the position.

H. U.R.I. Is Not A Viable Defendant

In this matter, Plaintiff commenced his administrative complaint against "The University of Rhode Island." The University is not a legal entity which may be sued in its own right. It is, in effect, a fictitious name, not a legal entity.

The University of Rhode Island is operated by the Board of Governors for Higher Education ("Board of Governors") pursuant to R.I.G.L. 16-32-2; 16-59-1(a). The Board of Governors is a legal entity which may sue and be sued. R.I.G.L. 16-59-1(a).

As such, the claims against the "University of Rhode Island" are not legally viable.

Separate and apart from the legal viability of claims against the University of Rhode Island in *this* forum, the Plaintiff's pre-suit administrative proceedings were likewise against the University of Rhode Island. As such, Plaintiff failed to exhaust administrative remedies against a viable legal defendant and cannot proceed on those claims (Title VII, ADEA and FEPA) which require exhaustion.[9]

Where the Charge of Discrimination, the administrative proceedings and this lawsuit were/are against a non-viable Defendant, URI believes that as a matter of law the federal statutory claims and the state FEPA claim are fatally defective. The lone remaining state claim, pursuant to RICRA is likewise fatally flawed insofar as it is brought against an 'entity' which has no legal existence.

**CONCLUSION**

For the foregoing reasons, the University of Rhode Island respectfully prays that Summary Judgment enter in its favor on all claims.

---

[9] Were this the only basis for judgment in URI's favor, the state Civil Rights Act claims would survive, but the continued jurisdiction over that claim, in this Court, would be a matter of discretion, not of right.

**TABLE OF CASES**

*Ayala-Gerena v. Bristol Myers-Squibb*, 95 F.3d 86 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 9, 10

*Carter v. Three Springs Residential Treatment*, 132 F.3d 635(11th Cir. 1998) . . . . . . . . . . . . . 11

*Center for Behavioral Health, R.I., Inc. v. Barros*, 710 A.2d 580 (R.I. 1998) . . . . . . . . . . . . . . . 5

*DeCamp v. Dollar Tree Stores, Inc.*,875 A.2d 13(R.I. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Desert Palace, Inc. v. Costa*, 123 S.Ct. 2148 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

*Eastridge v. R.I. College*, 996 F.Supp. 161 (D.R.I. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*Febres v. Challenger Caribbean Corp.*, 214 F.3d 57 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 10

*Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1 (1st Cir. 2000) . . . 6

*Fernandes v. Costa Brothers Masonry, Inc.*,199 F.3d 572 (1st Cir. 1999) . . . . . . . . . . . . 9, 11-13

*Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fuller v. Phipps*, 67 F.3d 1137 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gannon v. Narragansett Elec. Co.*, 777 F.Supp 167 (D.R.I. 1991) . . . . . . . . . . . . . . . . . . . . . . . 6

*Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gu v. Boston Police Department*, 312 F.3d 6 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Hall v. Grand Foods, Inc.*, 175 F.3d 1074(D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 971 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 10

*Ingram v Brink's, Inc.*, 414 F.3d 222 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lambert v. Ackerly*, 180 F.3d 997(9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lieberman v. Gant*, 630 F.2d 60 (2d Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Maldonado v. U.S. Bank*, 186 F.3d 759 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) . . . . . . . . . . 5, 6, 9, 10

*Mitchell v. City of Wichita*, F.3d (slip op. 04-3199) (10th Cir. 2005) . . . . . . . . . . . . . . . . . 6

*Mulero-Rodriguez v. Ponte, Inc.*, 98 F.3d 670 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989) . . . . . . . . . . . . . . . . 9, 12, 13

*Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.*, F.3d (1st Cir. 2005) . . . . . . 13

*Ronda-Perez v. Banco Bilbao Vizcaya Argentaria*, 404 F.3d 42 (1st Cir. 2005) . . . . . . . . . . . . . . 5

*Rosenberg v. City of Everett*, 328 F.3d 12 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Rosenfeld v. Egy*, 346 F.3D 11 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Rossy v. Roche Prods., Inc.*, 880 F.2d 621 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46 (1st Cir. 2000) . . . . . . . . . . . 13

*St. Mary's Honor Center. V. Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993) . . . . . . . . . . . . . . . . . . 6

*Taylor v. Virginia Union Univ.*, 193 F.3d 219 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 7

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 103 S.Ct. 1478 (1981) . . . . . . . 5-7

*Thomas v. NFL Players Ass'n*, 131 F.3d 198 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711 (1983) . . . . . . . . . . . . . . . . . . . . . 9

*Vesprini v Shaw Contract Flooring Services, Inc.*, 315 F.3d 37 (1st Cir. 2002) . . . . . . . . . . . . . . 5

*Villanueva v. Wellesley Coll.*, 930 F.2d 124 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wynn &Wynn P.C. v. Mass. Comm'n Against Discrimination*, 431 Mass. 655, 729 N.E.2d 1068 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATUTES CITED**
**(Excerpts)**

**TITLE VII**

42 USC § 2000e-2 Unlawful employment practices

1. SUBCHAPTER VI - EQUAL EMPLOYMENT OPPORTUNITIES

(a) Employer practices It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

**AGE DISCRIMINATION IN EMPLOYMENT ACT**

29 USC § 623 Prohibition of age discrimination

1. (a) Employer practices It shall be unlawful for an employer -

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

**R.I. FAIR EMPLOYMENT PRACTICES ACT**

28-5-7 Unlawful employment practices.

1. It shall be an unlawful employment practice:

(1) For any employer:

(i) To refuse to hire any applicant for employment because of his or her race or color, religion, sex, sexual orientation, gender identity or expression, disability, age, or country of ancestral origin;

(ii) Because of those reasons, to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment. However, if an insurer or employer extends insurance related benefits to persons other than or in addition to the named employee, nothing in this subdivision shall require those benefits to be offered to unmarried partners of named

employees;

## R.I. CIVIL RIGHTS ACT

42-112-1 Discrimination prohibited.

1. (a) All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For the purposes of this section, the right to "make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property" includes the making, performance, modification and termination of contracts and rights concerning real or personal property, and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships.

(c) Nothing contained in this chapter shall be construed to affect chapter 14.1 of title 37, chapter 5.1 of title 28 or any other remedial programs designed to address past societal discrimination.

(d) For the purposes of this section, the terms "sex", "disability" and "age" have the same meaning as those terms are defined in § 28-5-6, the state fair employment practices act.

**CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing document was mailed, by regular mail, postage prepaid, on this 7 day of Oct., 2005, to the following attorney(s) of record:

David S. Cass
194 Waterman Street
Providence, R.I. 02906

______________________