UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEF GORRES, Plaintiff, | ) | |
| v. | ) | C.A. No. 04-319-T |
| THE UNIVERSITY OF RHODE ISLAND, Defendant. | ) | |

**UNIVERSITY OF RHODE ISLAND'S STATEMENT OF UNDISPUTED FACTS**[1]

The University of Rhode Island hereby submits its Statement of Undisputed Facts, pursuant to Local Rule 12.1:

1. The Defendant advertised an open position of Terrestrial Biogeochemist in 2001. Plaintiff's Complaint at Paragraph 13.

2. The process of hiring a tenure-track professor at the University of Rhode Island includes an identification of need within the department which is communicated to the Dean. The Dean would then go to the Provost to request the position in question. If the Provost agrees and allocates the position, a search process is commenced which involves asking the Chairman of the Department to make a recommendation to the Dean's Office with regard to the composition of a search committee. Once the search committee is composed, the search committee develops a position description and a position advertisement. This requires the approval of the Dean's Office as well as the Affirmative Action Office. There is a

[1] The "facts" set forth here are offered strictly in the context of a Motion for Summary Judgment, given the standards governing such a Motion. By setting forth these facts, URI does not concede, for trial or other purposes, these facts or agree that evidence which may support findings of these facts is admissible.

recruitment period during which those applications in response to the advertisement come in. Those applications are considered by the search committee. The search committee goes through another process of narrowing the number of applicants for those worthy of an interview. Those candidates selected for an on-campus interview are brought in, extensively interviewed, make presentations, etc. The search committee then meets, makes a recommendation to the Dean's office regarding the preferences for hire or may recommend closing the search. Any recommendation must be submitted to the Affirmative Action office and if approved, is returned to the office of the Dean who then has the authority to select a candidate if he or she so chooses and forward the name of the selected candidate to the office of the Provost for approval, or close the search. Seemann depo, pp. 11-12.

3. Plaintiff applied for the position. Complaint, par. 14.

4. Three candidates for the position of Terrestrial Biogeochemist were approved for an on-campus interview. Seemann depo, p. 33.

5. Plaintiff was granted an on-campus interview. Complaint, par. 15.

6. At the on-campus interview, Associate Dean Dennis Nixon, at or around the time Plaintiff's extensive international experience and training were discussed, asked "Are you a citizen of the world, or are you a U.S. Citizen?" Plaintiff's Answer to Interrogatory #8; Gorres Depo. p.58, l. 9-24.

7. Plaintiff, in an e-mail communication to the search committee chair, commented on Dean Nixon's question stating, in part: "This may be an innocent question by Dr. Nixon but I felt extremely uncomfortable when he asked it" and "I am not at this point assuming any malicious intent." E-mail from Josef Gorres dated December 18, 2002, Plaintiff's Document Production.

8. Following the interview process, Emily Bernhardt was ranked #1, Josef Gorres was ranked #2 and a third applicant was ranked #3. Seemann depo., p. 41.

9. Dr. Seemann recommended that Dr. Bernhardt be offered the position. Seemann depo., p. 45.

10. Dr. Bernhardt was more qualified for the position than Plaintiff. Gorres Depo., p. 43, l.12-15, 46, l.14-16.[2]

11. The Request to Hire Form (Form AA3) was signed by the search chair, the Dean's office, the Provost Office and the Affirmative Action office indicating Dr. Bernhardt as the "selected" candidate and included, as reasons "most extensive research experience in plant – soil landscape." Exhibit "C", Nixon depo..

12. Plaintiff was not selected in the AA3 form. The stated reason was "less experienced in research on plant – soil/landscape interactions." Exhibit "C" Dennis depo.

13. After the position was offered to Bernhardt, Dean Seemann stated, at a faculty meeting which took place on March 19, 2003: "and I will also reemphasize the issue of diversity here in hiring a woman for the department." Plaintiff's Answer to Interrogatory #8.

14. After the position was offered to Bernhardt, Dean Seemann stated, at a faculty meeting which took place on March 19, 2003: "You cannot ask for a tenor track faculty with all white guys sitting around a table." Plaintiff's Answer to Interrogatory #8.

15. After the position was offered to Bernhardt, Dr. Cathy Roheim stated, at a faculty meeting which took place on March 19, 2003: "but keeping Emily is another big issue, and this plays into that, and you know, for a variety of reasons which as far as I know are not under your

---

[2]*See also* Statement of Plaintiff's Counsel, Gorres Depo., p.48, l.1-18, indicating Plaintiff is not, in this case, disputing that Dr. Bernhardt was more qualified than Plaintiff.

control at all, you've, you know, in the time I have been here, you have had three different women faculty, all who have left for one reason or another, and it sure would be nice to have one get through the tenure process and be here. I think it would be good for the students. You've got a lot of female undergraduates." Plaintiff's Answer to Interrogatory #8.

16. After the position was offered to Bernhardt, Dean Seemann stated, at a faculty meeting which took place on March 19, 2003: "but again, in conversations with Justin I think he sees how what he does fits into the mission of this department. He understands that. I think he really does. He strikes me as a really bright young guy" Plaintiff's Answer to Interrogatory #8.

17. After the position was offered to Bernhardt, Dean Seemann stated, at a faculty meeting which took place on March 19, 2003: "I would begin with the fact that, you know, we have a really bright young mind on our hands, and there is no doubt (what) I think about that." Plaintiff's Answer to Interrogatory #8.

18. After the position was offered to Bernhardt, Dean Seemann stated, at a faculty meeting which took place on March 19, 2003: ". . . but a successful environment on the campus is like (inaudible) in that you will all, you know, serve as that – that good mentoring community that they're both going to need as young scientists." Plaintiff's Answer to Interrogatory #8.

19. After the position was offered to Bernhardt, Dean Seemann stated, at a faculty meeting which took place on March 19, 2003: "We believe first of all that – that a competitive University needs espousal hire policy that would accommodate situations like this, and particularly, when we are in the process of trying to be extraordinarily competitive to hire a woman into this department. " Plaintiff's Answer to Interrogatory #8.

20. After Dr. Bernhardt declined the offer of hire at the University of Rhode Island, Dean Seemann did not continue the search for the position of Terrestrial Biogeochemist. Seemann

depo, p.69.

21. Dean Seemann did not offer the position to Plaintiff because he felt that Gorres' caliber as a research scientist was not at the level that Seemann was looking for for new faculty, in advancing the research capabilities of the College of the Environment and Life Sciences. Dean Seemann felt that Plaintiff did not bring sufficient scientific diversity to the Department because of the intertwining of his research program with those of others in the Department. Seemann depo., p. 83, l.10-18. Dean Seemann did not believe that Plaintiff's research was on the cutting edge of bringing the highest level of scientific capability to the University, that it didn't have the highest level that Seemann thought the University should be able to attract. It was one of the goals of the Dean to significantly move forward the research capacity, the level of recognition and the overall quality and success of faculty research and take it to the next level within the college. Seemann depo., p. 84, l.5-19.

22. Dean Seemann testified that one of the most impoatant ways that he can take the University to the next level is through the hiring of new faculty, and by reaching out to get the best and the brightest individual to come to the University and take it to the next level where it is competing with other top-flight universities, like Duke, Stanford and Harvard. Seemann Depo., p. 84, l.20 – p. 85, l. 2.

Respectfully submitted,
The University of Rhode Island,
By its attorneys,

Date: 10/7/05

Jeffrey S. Michaelson, Esq. (#3299)
Michaelson & Michaelson
P.O. Box 622
7454 Post Road
North Kingstown, R.I. 02852
Telephone: (401) 295-4330
Facsimile: (401) 295-5220

Timothy J. Dodd (JM)

Timothy J. Dodd, Esq. (#3150)
215 Broadway
Providence, R.I. 02903
Telephone: (401)272-3900
Facsimile: (401)331-1440

**CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing document was mailed, by regular mail, postage prepaid, on this 7 day of Oct., 2005, to the following attorney(s) of record:

David S. Cass
194 Waterman Street
Providence, R.I. 02906

______________________________