**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

JOSEF GORRES

*vs.* C.A. No.: 04-319T

THE UNIVERSITY OF RHODE ISLAND and
THE RHODE ISLAND BOARD OF GOVERNORS
FOR HIGHER EDUCATION

**PLAINTIFF'S OBJECTION TO THE DEFENDANT'S MOTION TO DISMISS**

NOW COMES the plaintiff in the above captioned matter and hereby objects to the defendant The University of Rhode Island's motion to Dismiss. In support hereof, plaintiff incorporates by reference the statement of disputed facts and memorandum in support of plaintiff's objection to the defendant's motion for summary judgment.

Respectfully submitted:
JOSEF GORRES
By and through his attorney

David S. Cass, #5044
194 Waterman Street
Providence, RI 02906

**CERTIFICATION**

I hereby certify that I a true copy of the foregoing document was mailed, first class mail, postage prepaid this 30th day of November 2005 to:

Jeffrey Michaelson, Esquire
Michaelson & Michaelson
P.O. Box 622
North Kingstown, RI 02852

Timothy Dodd, Esquire
215 Broadway
Providence, RI 02903

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

JOSEF GORRES

*vs.* C.A. No.: 04-319T

THE UNIVERSITY OF RHODE ISLAND and
THE RHODE ISLAND BOARD OF GOVERNORS
FOR HIGHER EDUCATION

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS OBJECTION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted:
JOSEF GORRES
By and through his attorney

David S. Cass, #5044
194 Waterman Street
Providence, RI 02906

**CERTIFICATION**

I hereby certify that I a true copy of the foregoing document was mailed, first class mail, postage prepaid this 30th day of November 2005 to:

Jeffrey Michaelson, Esquire
Michaelson & Michaelson
P.O. Box 622
North Kingstown, RI 02852

Timothy Dodd, Esquire
215 Broadway
Providence, RI 02903

# TABLE OF CONTENTS


**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**POINTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . 2

**A. LEGAL FRAMEWORK** . . . . . . . . . . . . . . . . . . . . . . . . . 2

**B. PLAINTIFF CAN ESTABLISH A PRIME FACIE CASE** . . . . . . 5

**C. PLAINTIFF CAN ESTABLISH PRETEXT** . . . . . . . . . . . . . . . 8

**D. PLAINTIFF IS NOT REQUIRED TO PRESENT DIRECT EVIDENCE TO ASSERT MIXED-MOTIVE** . . . . . . . . . . . . . . 10

**E. THE UNIVERSITY OF RHODE ISLAND IS A DE FACTO LEGAL ENTITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**F. THE BOARD OF GOVERNORS IS A PROPER PARTY BEFORE THIS COURT AND THE CLAIM OF FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES FAILS** . . . . . . 12

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF CASES AND STATUTES. . . . . . . . . . . . . . . . . . . . . . . . . . .i

## INTRODUCTION

THE DEFENDANTS have moved this Court for the grant of summary judgment [1] on three grounds. The first assertion is that the facts cannot establish plaintiff's legal claims of discrimination. The second argument is that the University of Rhode Island does not exist as an entity available for redress before the courts. Lastly, by supplement, the Board of Governors of Higher Education asserts that its inclusion in this suit, after its name was not specifically presented in the administrative proceedings, is improper and in violation of the administrative requirements of Title VII, the Age Discrimination in Employment Act and the Rhode Island Fair Employment Practices Act. Each of the posited arguments is flawed and insufficient for the granting of the motions presented.

As is set forth in Plaintiff's Statement of Disputed Facts, and discussed below, there is more than ample evidence that gender and age were motivating factors in the refusal to hire the plaintiff, or in the alternative, that the reasoning given by the defendants is merely a pretext and age and gender were a determinative factor in the decision. The University's assertion that it is not available as an entity is belied by the factual manner in which the University operates and attempts to place the legislative failure to assign the University responsibility for its actions above the reality of the University's behavior as a legal entity. The last argument, of administrative error by the plaintiff, is also without foundation as has already been addressed by this Court. By the

[1] Plaintiff addresses the arguments asserted in the two memoranda for summary judgment and the motion to dismiss as the argument set forth in the University of Rhode Island's Motion to Dismiss is the same as that presented in the University of Rhode Island's initial Motion for Summary Judgment based on the University's not being a legal entity.

clear standards as declared by the First Circuit, the inclusion of the Board of Governors is not in error.

## FACTS

Plaintiff incorporates his Statement of Disputed Facts as presenting the factual setting in the instant matter.

## POINTS AND AUTHORITIES

### A. LEGAL FRAMEWORK

The defendants, in arguing that the facts taken in a light most favorable to the plaintiff support a grant of summary judgment for the defendant, set forth the legal framework for analysis of the facts at time of trial. By this, the defendants attempt to impose upon the plaintiff a stricter burden than is applicable to a motion for summary judgment. Although the legal frameworks applicable at trial in a discrimination case are set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) and their progeny, the inquiry, at this stage of the proceedings, is much less rigorous for the plaintiff. As addressed in this District in *Eastridge v. Rhode Island College*, 996 F. Supp. 161 (D.R.I. 1998), the *McDonnell Douglas* analysis does not fit with the nature of the Court's inquiry and standard on a motion for summary judgment especially given the reverse discrimination claims of the plaintiff. *Id* at 165-167. The District Court looked to the United States Supreme Court

case of *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983), as stating the basic inquiry.

> The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." [*Texas Dep't of Community Affairs v.*] *Burdine*, [450 U.S. 248 (1981),] supra, at 253. In other words, is "the employer . . . treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furuco Const. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The prime facie case method established in McDonnel Douglas was "never intended to be rigid, mechanized or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco supra*, 438 U.S. at 577.

*Aikens*, 460 U.S. at 715 (full citation of *Burdine* added) quoted in full in *Eastridge*, supra, at 167. Based upon the Court's analysis in *Eastridge*, the appropriate inquiry is whether or not an inference can be drawn from the established facts that the employer here treated plaintiff less favorably because of his gender and age. *Eastridge,* supra, at 167.

An application of the standard stated in *Eastridge* to the facts set forth in Plaintiff's Statement of Disputed Facts is conclusive that there can be drawn an inference that the employer here treated plaintiff less favorably because of his gender and age. As covered in the Plaintiff's Statement of Disputed Facts, (1) the plaintiff was qualified for the position (¶¶ 16-19), (2) during the defendants' attempt to hire another candidate, who was a female, the deans responsible for making the recommendation for hire made statements that gender and age were a direct and substantial motivation for the manner in which they were attempting to complete the hire (¶¶ 24-30), (3) the dean ultimately responsible for the hiring decision subsequently, in another hire, hired a second ranked

candidate which had the same AA3 notations as the plaintiff in the hire at issue here, but who happened to be a woman (¶¶ 36-38), (4) the University needed to increase its female faculty to show progress in the ADVANCE program in order to maintain a $3.75 million grant from the National Science Foundation (¶¶ 39-48), (5) the dean making the hiring decision was directly involved in the ADVANCE proposal (¶ 43), (6) the hiring custom as established by the discovery received from the defendants clearly shows that the failure to hire the plaintiff was well outside the normal process (¶¶ 49-52), and (7) at least three prior hires by the defendants were clearly affected by and motivated by gender (¶¶ 53-69). These facts establish at least an inference that the employer here treated plaintiff less favorably because of his gender and age.

If this Court is inclined to follow the path stated by the defendants in addressing the facts at this stage pursuant to the framework of *McDonnell Douglas*, the facts viewed in a light most favorable to the plaintiff are conclusive and a grant of summary judgment in favor of the defendants is inappropriate.

Under the *McDonnell Douglas* framework, plaintiff must establish a *prime facie* case which, in a refusal to hire case, is a four part analysis as follows: (1) plaintiff is a member of a protected class; (2) plaintiff applied for an open position; (3) plaintiff was not selected; and (4) after rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonald Douglas*, 411 U.S. at 802; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). The *prime facie* case method established in *McDonnell Douglas* was "never intended to be rigid, mechanized or ritualistic." *Aiken*, 460 U.S. at 715.

**B. PLAINTIFF CAN ESTABLISH A PRIME FACIE CASE**

The membership in a protected class requirement has been modified to allow reverse discrimination cases with differing standards for satisfaction of this element. The defendants cite *Mitchell v. City of Wichita*, ___ F.3d ___ (slip op. 04-3199)(10th Cir. 2005) and *Eastridge,* supra, apparently to bring the Courts attention to the reverse discrimination standards but do not argue any failure by the plaintiff to meet these standards. However, by either standard, the plaintiff satisfies the first element. Plaintiff asserts that Judge Lagueux' analysis in *Eastridge* is the correct view, certainly at this stage of the proceedings, and has been met as has been discussed above. If this element is at issue and this Court looks to the 10th Circuit's decision in *Mitchell* as apposite, this standard is also met. The Court in *Mitchell* states that a plaintiff, to satisfy the first element in a reverse discrimination case, must either "establish background circumstances that support an inference that the [employer] is one of those unusual employers who discriminate against the majority" or produce "indirect evidence sufficient to support a reasonable probability [] that but for plaintiff's status[,] the challenged employment decision would have favored the plaintiff." *Mitchell* at p. 5 quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 & 590 (10th Cir. 1992).

Each of these alternate standards is met. Plaintiff has produced, as part of the Plaintiff's Statement of Disputed Facts, prior acts of discrimination against the majority as well facts sufficient for an inference that such discrimination affected his application

in this instance. Although not specifically addressed by the defendants, the plaintiff satisfies both the second and third elements set forth in *McDonnell Douglas*. It is undisputed that the plaintiff applied for the position and was not selected for it.

The defendants, in asserting that the plaintiff cannot establish a prime facie case, attack plaintiff's ability to satisfy the fourth element, that the position remained open. The defendants in so arguing place two distinct arguments, though combined in their memorandum. First, the defendants assert that because the position plaintiff sought was offered to a "more qualified" candidate, denial of the position cannot satisfy the fourth element. Secondly, the defendants assert that the position was closed and thereby did not remain open. Addressing the second argument first, the defendant's argument is factually in error. While it is true that the position was closed, this closure occurred only after Dean Jeffrey Seemann determined that he would not recommend the plaintiff for hire into the position. Plaintiff Statement of Disputed Facts, ¶ 34. "McDonnell Douglas principally demands 'that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'" *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139 (D.C. Cir. 2004), quoting *Int'l Bhd. Of Teamsters*, supra, 431 U.S. at 358 n. 44. Thereby, the fourth element serves solely to confirm that the rejection was not based on the absence of a vacancy. As was testified to by Dean Seemann in his deposition, the position was closed after he determined that the plaintiff would not be recommended for the position. Plaintiff's Statement of Disputed Fact, ¶ 34. The fourth element is therefore satisfied.

The other argument against plaintiff's ability to satisfy this element is that because the position was initially offered to a "more qualified" candidate, this is now the level of qualification for the position and the position and there was no attempt to fill the position at this level. This argument is more appropriately addressed as defendants' non-discriminatory reason and plaintiff's assertion of pretext. However, as presented, the defendants appear to assert that the bare fact that the position was initially offered to a "more qualified" candidate precludes plaintiff's ability to establish a *prime facie* case.

The defendants cite *Burdine,* supra, *Teneyck*, supra, and *Gu v. Boston Police Department*, 312 F.3d 6 (1st Cir. 2002) and their holdings that an employer has the discretion to choose from equally qualified candidates (*Burdine*) or that the fourth element cannot be met when there is a hiring of a better candidate (*Teneyck* and *Gu*). However, this argument misunderstands plaintiff's claims. Plaintiff asserts that once the "more qualified" candidate rejected the offer of the position, her existence is no longer relevant to the determination to hire the plaintiff. This is distinguishable from the analysis of the fourth element in the cases cited by the defendants. In those cases, the fourth element is addressed in the factual context of a comparative hire which is clearly distinguishable from the instant matter as in this case there was no comparative hire. Certainly, an employer can hire a more qualified candidate. However, once a more qualified candidate rejects the position, the analysis of the hiring decision relating to the plaintiff is as if the prior candidate did not exist. Plaintiff does not assert that the offer of the position initially to the female candidate is in itself discriminatory. Plaintiff asserts that after she declined the position, the inclusion of gender and age in the consideration of

whether to offer the position to him was discriminatory. As the factual circumstances are clearly distinguishable from the legal standards advocated by the defendants, their argument is inapposite to this case.

## C. PLAINTIFF CAN ESTABLISH PRETEXT

Following along the *McDonnell Douglas* burden shifting analysis, the defendants next assert that they have articulated a non-discriminatory reason for their decision. Plaintiff accepts that the defendants have claimed that the non-discriminatory reason for their refusal to hire the plaintiff is that they, being Dean Seemann and his assistants, determined that the plaintiff was not sufficiently qualified for the position. The defendants further assert that "Plaintiff cannot, as a matter of law, prove that he was qualified for the position." Memorandum in Support of University of Rhode Island's Motion for Summary Judgment, p. 8.

To reach this conclusion, the defendants assert that there were no clear objective criteria and that the process followed, itself, establishes that the position was subject to a legitimate, subjective determination of appropriate URI personnel. By this argument, there can never be any judicial review of the hiring determination of the defendants unless they were to have specifically written discriminatory reasons down in their hiring paperwork. Further, by this argument the last phase of the *McDonnell Douglas* framework ceases to exist. As long as some subjectivity is available to those making the hiring determination, their decision is above reproach. This is fallacious. Plaintiff does not seek to have this Court sit as a super-tenure committee. However, the process

employed by the defendants is in place to bring some objectivity to the hiring process. By the use of the Search Committee, the Department into which the candidate is to be hired, the Affirmative Action Office, and the Dean's office, the full power of analysis available to the defendants regarding hiring is brought to bare to determine qualifications in part just so that the final determination is insulated from arbitrary and capricious decision-making.

In this instance, the Search Committee determined the plaintiff qualified for the position. Plaintiff's Statement of Disputed Facts, ¶ 18. The Department determined him qualified for the position and recommended him as a "close second" to the person to whom the position was offered and who declined the position. Plaintiff's Statement of Disputed Facts, ¶¶ 18 & 19. The Affirmative Action Office determined the plaintiff to be qualified for the position. Plaintiff's Statement of Disputed Facts, ¶ 17. The only people who disagreed with this determination were the three deans. Certainly, their motivation in so concluding can be challenged. Looking into the motivations of the deans, there is the fact that two of the deans were involved in the University's ADVANCE program which was to bring in $3.75 million dollars into the University with a stated goal and requirement of increasing the number of female faculty in the sciences. Plaintiff's Statement of Disputed Facts, ¶¶ 39-48. Along with this monetary motive, there are the statements of the deans directly relating to their desire to hire a woman into the department to the extent that they were going to be "extraordinarily competitive to hire a woman into this department" and repeated comments regarding the young age of the other applicant. Plaintiff's Statement of Disputed Facts, ¶¶ 24-30. The deans'

determination is further suspect given the overwhelming custom for hires at the University and these deans' departure from that custom in this instance and their following custom in a subsequent hire when the second ranked candidate was female. Plaintiff's Statement of Disputed Facts, ¶¶ 49-52, 37 & 38. The deans' determination and the indications of discrimination must certainly be viewed in light of at least three prior clear instances of gender motivation in hiring. Plaintiff's Statement of Disputed Facts, ¶¶ 53-69. All of these facts support the conclusion that the deans' determination was merely a pretext. There certainly exists a genuine issue of material fact as to these issues.

## D. PLAINTIFF IS NOT REQUIRED TO PRESENT DIRECT EVIDENCE TO ASSERT MIXED-MOTIVE

Next in order, the defendants assert that there is no legally sufficient direct evidence of discrimination. The defendants anticipate, correctly, that plaintiff will assert a mixed-motive legal framework as set forth in *Price Waterhouse* and *Aiken*, both supra. However, the defendants mistakenly assert that there remains a requirement that in order to pursue this legal application, the plaintiff must present "direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), removed this requirement from the mixed-motive analysis. Justice Thomas stated, on behalf of a unanimous Court, that "direct evidence of discrimination is not required in mixed-motive cases." *Id* at 101-102. The appropriate inquiry is:

> In order to obtain an instruction under §2000e-2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a

> preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice."

*Id* at 101. By this decision of the Supreme Court, the direct evidence argument presented by the plaintiff is without merit.

## E. THE UNIVERSITY OF RHODE ISLAND IS A DE FACTO LEGAL ENTITY

The Defendant University of Rhode Island in its initial filing for summary judgment asserted that the term "University of Rhode Island" is a fictitious name, not a legal entity. The University further asserts that it is operated by the Rhode Island Board of Governors for Higher Education which is the legal entity that may sue and be sued. Based on these asserted facts, the University argues that it cannot be named as a party in this action. The University's position is at odds with the reality in which the University has operated for decades, up until the assertion in this case that it could not be sued, as it is a fictitious name for the Board of Governors. As was presented to this court in oral argument on plaintiff's Motion to Amend the complaint to add as a defendant the Board of Governors for Higher Education, the University has for decades repeatedly sued and been sued in both the Rhode Island and Federal Courts[2]. In fact, the University has been

---

[2] See, *Gorman v. University of Rhode* Island, 837 F.2d 7 (1st Cir. 1988); University *of Rhode Island v. Chesterton, 2 F.3d 1200 (1st Cir. 1993); University of Rhode Island v. Chesterton*, 721 F. Supp. 400 (R.I. 1989); *Lallemand v. University of Rhode Island*, 9 F.3d 214 (1st Cir. 1993); *University of Rhode Island v. University of Rhode Island Chapter of the American Association of University Professors*, Rhode Island Superior Court Case No. 2000-5007; *University of Rhode Island v. Dept. of Employment and Training*, 691 A.2d 552 (R.I. 1997); *Wilkinson v. University of Rhode Island*, Rhode Island Superior Court Case No. 2003-0573; *Chang v. University of Rhode Island*, 118 R.I. 631 (1977).

sued twice with actions filed in this Court by plaintiff's counsel asserting discrimination.[3] In each of these cases the University was named before the administrative agencies and not the Board of Governors.[4] Both times, counsel for the Board of Governors defended the action and failed to raise any issue as to the University as a party before this court.[5] Additionally, as produced in discovery, the University has entered into a contract[6] in its name, not that of the Board of Governors. Plaintiff's Statement of Disputed Facts, ¶ 70. It is disingenuous for the University to sue, be sued, enter into contracts and then assert that it cannot be a proper party before this Court.

## F. THE BOARD OF GOVERNORS IS A PROPER PARTY BEFORE THIS COURT AND THE CLAIM OF FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES FAILS

The defendant Board of Governors has sought summary judgment based on the fact that the administrative proceedings before the Equal Employment and Opportunity Commission (EEOC) and the Rhode Island Commission for Human Rights (RICHR) failed to name the Board of Governors. Based on this failure, the defendant asserts that the plaintiff has failed to exhaust the administrative remedies required by Title VII, the Age Discrimination in Employment Act (ADEA) and the Rhode Island Fair Employment Practices Act (FEPA). The arguments advanced by the Board of Governors are

---

[3] See, *Hawksley v. The University of Rhode Island*, D.R.I., 03-312T; *Christine King v. The University of Rhode Island*, D.R.I., 02-183 ML.

[4] *Id.*

[5] *Id.*

[6] Plaintiff asserts that this contract as part of the AVANCE program is likely not the sole contract entered into by the university.

substantially similar to the objections presented against the plaintiff's Motion to Amend that was recently granted by this Court.

As was argued before this Court, plaintiff filed his charge with the EEOC and RICHR against the University of Rhode Island and had at that time the assistance of counsel. It is the existence of the assistance of counsel at the time of the filing of the charge against the University and not the Board of Governors that the defendant seeks to emphasize in its supplement to urge this Court to grant the Board of Governors a summary judgment. However, the defendant does not address the full factual circumstances of the filing of the charge and the response thereto as well as the actions of the University prior to the filing of the charge in this matter. The defendant's reliance on the role of counsel at the time of the filing of the charge ignores the language of the standard established and improperly attempts to use the factual landscape present in many prior rulings as restrictive of the standard.

As had been presented to this Court in argument previously, and was addressed in the preceding section of this memorandum, the University of Rhode Island had not restricted its actions before the Courts and in its contractual dealings solely to the agency of the Board of Governors as would be required by the legislative framework under which the University explicitly and the Board of Governors implicitly seek refuge from plaintiff's claims. The University has on a number of occasions responded to claims made against it and has affirmatively filed claims in this Court as well as before the First

Circuit Court of Appeals and the Rhode Island State Courts.[7] In prior cases before this very Court and on one occasion this specific Judge asserting discrimination by the University of Rhode Island,[8] the General Counsel to the Board of Governors defended the action and never raised the issue of the naming of the defendant.

More specifically to this case, neither the University nor the Board of Governors raised any issue with the naming of the respondent before the Rhode Island Commission for Human Rights. The University of Rhode Island, before the Commissions, accepted its position as respondent without reference to the requirement that the Board of Governors be included. Certainly, General Counsel for the University of Rhode Island is the appropriate entity to make this assertion to the Commissions. By the statutory structure asserted by the University of Rhode Island and the Board of Governors, General Counsel is an agent and representative of the Board of Governors. In all respects, the Board of Governors has acted as if all claims against the University of Rhode Island were claims against the Board of Governors, identical in practice.

It is within this factual setting that the Board of Governors now asserts that the exceptions to the naming requirement of Title VII, ADEA and FEPA are restricted solely to *pro se* submissions to the administrative agencies. The purpose of requiring an aggrieved party to resort first to the EEOC is to ensure that the defendant has notice and to provide an avenue for voluntary compliance without resort to litigation. *McKinnon v. Kwong Wah*, 83 F.3d 498, 505 (1st Cir. 1996), citing *Curran v. Portland Super. Sch.*

---

7 See Footnote 2, supra.

8 See Footnote 3, supra.

*Committee*, 435 F. Supp. 1063 (D. Maine 1977); *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3rd Cir. 1977) citing *Le Beau v. Libby-Owens-Ford Co.*, 484 F.2d 798, 799 (7th Cir. 1973); *Fekete v. U.S. Steel Corp.*, 424 F.2d 331, 334; and *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969). As stated in *Kwong Wah* and *Glus*, there are four factors to consider in determining whether an unnamed party in the EEOC charge may still properly be a defendant in a subsequent Title VII action:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests to the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Kwong Wah*, supra, at 505; *Glus*, supra, at 888. These factors do not contain any requirement that the naming error be achieved without the assistance of counsel.

The defendant attempts, by listing a few factually similar cases wherein the plaintiff seeking to include an unnamed party was acting *pro se* at the administrative level, to suggest that the absence of counsel is a prerequisite to the availability of the *Glus* factors. The District Court for the Northern District of New York addressed this argument in *Olvera-Morales v. Sterling Onions, Inc.*, 322 F. Supp.2d 211 (N.D.N.Y. 2004), which addressed the *Johnson* factors as set forth in *Johnson v. Palma*, 931 F.2d 203 (2nd Cir. 1991). The *Johnson* factors are identical to the *Glus* factors set forth above. Analyzing a split in the Eastern and Southern Districts of New York, the Court in *Olvera-*

*Morales* concluded that the availability of the substantial interest test, the four factors enunciated in *Glus* and *Johnson,* was not predicated on the complainant's status as *pro se* because the Appeals Court decision that established the four part test did not explicitly so require and the four "factors do not even mention a plaintiff's status as represented or *pro se*." *Id* at 217. An application of the four *Glus* factors without requiring a lack of counsel appropriately balances the purposes sought to be achieved by the charging requirement and the purpose of Title VII to protect employees from discrimination. See, *Olvera-Morales*, supra, at 217. As further stated in *Olvera-Morales*, "a proper balance between these two sometimes-competing goals is best achieved by a case-by-case evaluation of the circumstances in light of the *Johnson* factors." *Id* at 217-218.

More appropriate to the Court's analysis, after eliminating the argued necessity of *pro se* status, is an actual application of the standard set forth in *Kwong Wah* and *Glus*. The defendant Board of Governors does not dispute factors 2 and 3. By addressing, almost exclusively, the existence of counsel at the time of the filing of the charge before the EEOC and the RICHR, the defendant is asserting the counsel should have known better and by reasonable effort could have included the Board of Governors. However, this assertion by the defendant wholly ignores the relaxed attitude maintained by the Board of Governors regarding the use of the University of Rhode Island as party before the Courts. As stated above, current counsel had proceeded against the University of Rhode Island previously and the Board of Governors failed to raise any objection to the naming of the University in the Administrative proceedings. The Board of Governors cannot in good faith assert that plaintiff's counsel should have known better when the

Board of Governors had on all prior occasions accepted the University as the proper party and had itself affirmatively used the University as the proper entity to pursue claims before the courts. The acceptance and use of the University of Rhode Island as the proper named party before this and other courts satisfies the first *Glus* factor. These very actions further satisfy the fourth factor to be considered under the *Glus* test.

As addressed in the preceding section of this memorandum, the University of Rhode Island has asserted that it is actually a fictitious name for the Board of Governors. By this argument, the Board of Governors was a party to the charge before the EEOC and the RICHR, named by its fictitious name. The University and Board of Governors cannot have it both ways, arguing (1) that the University is a fictitious name for the Board and thereby the use of the name before the EEOC and RICHR is inappropriate and the University should be dismissed from this action and (2) the Board was not named before the EEOC and RICHR. If the University is not an entity and only a fictitious name for a portion of the Board of Governor's responsibilities, then the Board was named by its fictitious name, one that it had authorized the use of by its prior acts, in the charge of discrimination and was thereby named in said charge.

For these reasons, the defendant Board of Governors' claim for summary judgment based on a failure to exhaust administrative remedies should be denied and dismissed.

## CONCLUSION

For all of the foregoing reasons, there exist genuine issues of material fact that preclude the granting of summary judgment on behalf of the defendants.

Respectfully submitted:
JOSEF GORRES
By and through his attorney

David S. Cass, #5044
194 Waterman Street
Providence, RI 02906

## CERTIFICATION

I hereby certify that I a true copy of the foregoing document was mailed, first class mail, postage prepaid this 30th day of November 2005 to:

Jeffrey Michaelson, Esquire
Michaelson & Michaelson
P.O. Box 622
North Kingstown, RI 02852

Timothy Dodd, Esquire
215 Broadway
Providence, RI 02903

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

JOSEF GORRES

*vs.* C.A. No.: 04-319T

THE UNIVERSITY OF RHODE ISLAND and
THE RHODE ISLAND BOARD OF GOVERNORS
FOR HIGHER EDUCATION

APPENDIX OF CASELAW AND STATUTES CITED

42 U.S.C §2000e-2(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969) . . . . . . . . . . . . . . . 8

*Chang v. University of Rhode Island*, 118 R.I. 631 (1977) . . . . . . . . . . . . . . . . 19

*Curran v. Portland Super. Sch. Committee*, 435 F. Supp. 1063 (D. Maine 1977) . . . 28

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) . . . . . . . . . . . . . . . . . . . . . . 58

*Eastridge v. Rhode Island College*, 996 F. Supp. 161 (D.R.I. 1998) . . . . . . . . . . 67

*Fekete v. U.S. Steel Corp.*, 424 F.2d 331 (3rd Cir. 1970) . . . . . . . . . . . . . . . . . 78

*Furuco Const. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) . 84

*Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3rd Cir. 1977) . . . . . . . . . . . . . . . . . . . 96

*Gorman v. University of Rhode* Island, 837 F.2d 7 (1st Cir. 1988) . . . . . . . . . . . 107

*Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324,
97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) . . . . . . . . . . . . . . . . . . . . . 117

*Johnson v. Palma*, 931 F.2d 203 (2nd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 165

*Lallemand v. University of Rhode Island*, 9 F.3d 214 (1st Cir. 1993) . . . . . . . . . . 174

*Le Beau v. Libby-Owens-Ford Co.*, 484 F.2d 798, (7th Cir. 1973) . . . . . . . . . . . . 180

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . 185

*McKinnon v. Kwong Wah*, 83 F.3d 498, (1st Cir. 1996) . . . . . . . . . . . . . . . . . . 196

*Mitchell v. City of Wichita*, ___ F.3d ___ (slip op. 04-3199)(10th Cir. 2005) . . . . . 207

*Notari v. Denver Water Dep't*, 971 F.2d 585 (10th Cir. 1992) . . . . . . . . . . . . . . 221

*Olvera-Morales v. Sterling Onions, Inc.*, 322 F. Supp.2d 211 (N.D.N.Y. 2004) . . . . 228

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) . . . . . . . . . . . . . . . . . . . . 241

*Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139 (D.C. Cir. 2004) . . . . . . . . . . . 285

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) . . . . . . . . . . . 297

*United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983) . . 306

*University of Rhode Island v. Chesterton, 2 F.3d 1200 (1st Cir. 1993)* . . . . . . . . . 312

*University of Rhode Island v. Chesterton*, 721 F. Supp. 400 (R.I. 1989) . . . . . . . 341

*University of Rhode Island v. Dept. of Employment and Training*,
691 A.2d 552 (R.I. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 345

*University of Rhode Island v. University of Rhode Island Chapter of the American Association of University Professors*,
Rhode Island Superior Court Case No. 2000-5007 . . . . . . . . . . . . . . . . 351

*Wilkinson v. University of Rhode Island*,
Rhode Island Superior Court Case No. 2003-0573. . . . . . . . . . . . . . . . 358