**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

JOSEF GORRES

vs. C.A. No.: 04-319T

THE UNIVERSITY OF RHODE ISLAND

# PLAINTIFF'S STATEMENT OF DISPUTED FACTS

## A. The Position of Assistant/Associate Professor of Terrestrial Biogeochemistry.

1. The plaintiff, Josef Gorres, is a 49 year-old male German national. Affidavit of Dr. Josef Gorres, Exhibit A.

2. The defendants first hired plaintiff in 1992 as a full time lecturer. Affidavit of Dr. Josef Gorres, Exhibit A.

3. Plaintiff was promoted to the position of Assistant Research Professor in the Department of Natural Resources Science in 1994. Affidavit of Dr. Josef Gorres, Exhibit A.

4. Plaintiff was promoted to the position of Associate Research in the Department of Natural Resources Science in 1999 after review of accomplishments by his peers, the College department chairs, and the recommendation of the Deans. Affidavit of Dr. Josef Gorres, Exhibit A.

5. In 2002, the defendants determined to fill the then vacant position of Assistant/Associate Professor of Terrestrial Biogeochemistry. Deposition of Thomas Husband, p 8, l. 20 – p. 11, l. 6, Exhibit B.

6. Filling the position of Assistant/Associate Professor of Terrestrial Biogeochemistry was a "high priority". Deposition of Thomas Husband, p. 9, l. 2-8. The department needed the position filled "as soon as possible". Memorandum from Thomas Husband to Jeffrey Seemann dated April 18, 2003, Exhibit C, and Deposition of Thomas Husband, p. 11, l. 11-16, Exhibit B. At the time of the search for the position, filling the position was "critical to the research and teaching missions of the department". Memorandum from Thomas Husband to Jeffrey Seemann dated July 1, 2002, Exhibit D.

7. The process set forth by the Defendants in University of Rhode Island's Statement of Undisputed Facts, ¶2, is accurate except that in the search for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry the Search Committee met with the NRS Department and the Department made the recommendation to the dean's office regarding the preferences for hire and that determination was adopted by the Search Committee and forwarded to Dean Jeffrey Seemann on the appropriate form (AA3). Deposition of Jose Amador, p. 29, l. 19-p. 31, l. 1, Exhibit E.

8. The Chair of the Natural Resource Science Department, Dr. Thomas Husband assigned Dr. Jose Amador as the Chair of the Search Committee for the position of

Assistant/Associate Professor of Terrestrial Biogeochemistry. Deposition of Thomas Husband, p 12, l. 10-12, Exhibit B.

9. The members of the Search Committee for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry were Dr. Allison Roberts, Dr. Kim Brosofske, Dr. Mark Stolt, Dr. Art Gold, Dr. Keith Killingbeck and Dr. Jose Amador. Deposition of Jose Amador, p. 8, l. 19-23, Exhibit E. Dr. Brosofske left the Search Committee for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry as she left the University of Rhode Island. Deposition of Jose Amador, p. 8, l. 24-p. 9, l. 2, Exhibit E.

10. The defendants approved the advertisement for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry on March 5, 2002. Suggested Advertisement with signed approval of Robert Gillis dated 3-5-02, Exhibit F.

11. The plaintiff applied for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry. University of Rhode Island's Statement of Undisputed Facts, ¶3.

12. Three candidates were approved, on November 20, 2002, by the Search Committee for on-campus interviews with the three being Dr. Josef Gorres, Dr. Mark David and Dr. John Schade. Memorandum from Jose Amador to Paula Valliere dated 20 November 2002, Exhibit G.

13. The Director of Affirmative Action, Equal Opportunity and Diversity, Robert E. Gillis rejected the selection by the Search Committee. Memorandum from Jose

Amador to Paula Valliere dated 20 November 2002 with notation dated 11/22/02, Exhibit G.

14. The Search Committee re-approved three candidates, on November 26, 2002, for on-campus interviews with the three being Dr. Josef Gorres, Dr. Mark David and Dr. Emily Bernhardt. Memorandum from Jose Amador to Paula Valliere dated 26 November 2002, Exhibit H.

15. The Director of Affirmative Action, Equal Opportunity and Diversity, Robert E. Gillis approved the reselection by the Search Committee. Memorandum from Jose Amador to Paula Valliere dated 26 November 2002 with notation dated 11/26/02, Exhibit H.

16. The Search Committee determined that all of the individuals selected for on-campus interviews, and specifically the plaintiff, were qualified for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry. Memorandum from Jose Amador to Jeff Seemann dated 24 December 2002, Exhibit I ; Memorandum from Art Gold to NRS Dept. dated December 13, 2002, Exhibit J; and Affidavit of Keith T. Killingbeck, Exhibit K.

17. The Office of Affirmative Action, Equal Opportunity and Diversity determined that all of the individuals selected for on-campus interviews were qualified for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry. Deposition of Paula Valliere, P. 10, l. 14-p. 11, l. 3, Exhibit L. Deposition of Robert E. Gillis, p. 24, l. 22-p. 25, l. 17, Exhibit M.

18. The NRS Department determined that all of the individuals selected for on-campus interviews, and specifically the plaintiff, were qualified, by a unanimous vote, for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry. Email from Thomas Husband to Jeff Seemann dated December 27, 2002, Exhibit N.

19. After the on-campus interviews, the NRS department ranked the candidates with Dr. Emily Bernhardt receiving the highest ranking and Dr. Josef Gorres" a close second." Email from Thomas Husband to Jeff Seemann dated December 27, 2002. The departments ranking was adopted by the Search Committee and submitted as a Request for Hire. Deposition of Jose Amador, p. 29, l. 19-p. 31, l. 1 and Request to Hire form (AA3), Exhibit O.

20. The Request to Hire form was approved by the Affirmative Action Office, the Provost's Office and the Dean's Office on December 30, 2002. Request to Hire form (AA3), Exhibit O.

21. The position of Assistant/Associate Professor of Terrestrial Biogeochemistry was offered to Dr. Emily Bernhardt. Deposition of Dr. Jeffrey Seemann, p. 44, l. 21-p. 45, l. 6; p. 48, l. 2-16, Exhibit P.

22. After Dr. Emily Bernhardt was offered the position of Assistant/Associate Professor of Terrestrial Biogeochemistry, she requested spousal accommodation of having her husband hired into a tenure track faculty position and said request was rejected. Deposition of Dr. Jeffrey Seemann, p. 50, l. 3-18, Exhibit P.

23. The defendants responded to the request for spousal accommodation by Dr. Emily Bernhardt by offering as part of the hire a lectureship for her husband worth an additional $30,000.00 to $40,000.00. Deposition of Dr. Jeffrey Seemann, p. 580, l. 3-8, Exhibit P.

24. Prior to the offer of the lectureship as spousal accommodation, Dean Jeffrey Seemann and other members of his office met with the NRS Department to discuss the need for spousal accommodation in the offer to Dr. Emily Bernhardt. Deposition of Dr. Jeffrey Seemann, p. 61, l. 6-p. 62, l. 6. Transcript from Audiotape In Re: Meeting with Dean Seemann, Exhibit Q.

25. At the meeting between Dean Jeffrey Seemann and the NRS Department, Dr. Jeffrey Seemann stated:

> We haven't indicated anything outside the ordinary (inaudible). We believe first of all that -- that a competitive university needs a spousal hire policy that would accommodate situations like this, and particularly, when we are in the process of trying to be extraordinarily competitive to hire a woman into this department. I cannot emphasize the importance of that. Not to use too many -- to hiring her and keeping her here.

Transcript from Audiotape In Re: Meeting with Dean Seemann, p. 10, l. 23-p. 11, l. 8, Exhibit Q.

26. At the meeting between Dean Jeffrey Seemann and the NRS Department, Dr. Jeffrey Seemann stated:

> And I will also then reemphasize the issue of diversity here in hiring a woman for this department.
>
> * * *
>
> You can't -- I don't know why you have not been successful several times in a row, but you can't not be successful here. You really --- you can't.

> You can't ask for a tenured faculty with all white guys sitting around a table. You really can't, and I think – I don't have to tell you why.

Transcript from Audiotape In Re: Meeting with Dean Seemann, p. 16, l. 1-24, Exhibit Q.

27. At the meeting between Dean Jeffrey Seemann and Associate Dean Cathy Roheim and the NRS Department, Dr. Roheim stated:

> but keeping Emily is another big issue, and this plays into that, and you know, for a variety of reasons which as far as I know are not under your control at all, you've, you know, in the time I've been here, you have had three different women faculty, all of whom have left for one reason or another and it sure would be nice to have one get through the tenure process and be here.

Transcript from Audiotape In Re: Meeting with Dean Seemann, p. 13, l. 13-20, Exhibit Q.

28. At the meeting between Dean Jeffrey Seemann and the NRS Department, Dr. Jeffrey Seemann, discussing the spousal accommodation for Dr. Emily Bernhardt's husband Justin, stated:

> but again, in conversations with Justin I think he sees how what he does fits into the mission of this department. He understands that. I think he really does. He strikes me as a really bright young guy,

Transcript from Audiotape In Re: Meeting with Dean Seemann, p. 28, l. 12-17, Exhibit Q.

29. At the meeting between Dean Jeffrey Seemann and the NRS Department, Dr. Jeffrey Seemann stated:

> I would begin with the fact that, you know, we have a really bright young mind on our hands and there is no doubt what I think about that.

Transcript from Audiotape In Re: Meeting with Dean Seemann, p. 29, l. 5-8, Exhibit Q.

30. At the meeting between Dean Jeffrey Seemann and the NRS Department, Dr. Jeffrey Seemann stated:

> but a successful environment on the campus is like (inaudible) and that you all, you know, serve as that -- that good mentoring community that they're both going to need as young scientists

Transcript from Audiotape In Re: Meeting with Dean Seemann, p. 31, l. 2-6, Exhibit Q.

31. Dr. Emily Bernhardt declined the offer of the position of Assistant/Associate Professor of Terrestrial Biogeochemistry on or before April 17, 2003. Email from Emily Bernhardt to Tom Husband dated April 17, 2003, Exhibit R. Deposition of Dr. Jeffrey Seemann, p. 66, l. 15-22; p. 76, l. 3-18, Exhibit P.

32. Once Dr. Emily Bernhardt declined the position of Assistant/Associate Professor of Terrestrial Biogeochemistry, Dr. Thomas Husband, Chair of the NRS Department stated to Dean Seemann that the search resulted in three highly qualified candidates and requested Dean Seemann to make an offer to the next candidate on the list. Memorandum from Thomas Husband, Chair, NRS to Dr. Jeffrey R. Seemann, Dean, CELS, Exhibit C.

33. Once Dr. Emily Bernhardt declined the position of Assistant/Associate Professor of Terrestrial Biogeochemistry, Dr. Keith Killingbeck, a member of the Search Committee requested to speak to Dean Seemann to offers reasons why Dr. Josef Gorres should be hired into the position and Dean Seemann did not accept the

offer to meet with Dr. Killingbeck. Affidavit of Dr. Keith Killingbeck dated 10 March 2005, Exhibit K.

34. After Dr. Emily Bernhardt declined the position of Assistant/Associate Professor of Terrestrial Biogeochemistry, the position remained open and Dean Seemann recommended not to hire the remaining candidates and to close the search. Deposition of Dr. Jeffrey Seemann, p. 86, l. 11-p. 87, l. 5, Exhibit P.

35. The plaintiff was notified by letter, dated May 20, 2003, that the search was terminated without filling the position, that the search was closed. Letter from Arthur J. Gold, Ph.D. to Dr. Josef Gorres dated May 20, 2003, Exhibit S.

36. The Request to Form for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry ranked plaintiff second and stated that the plaintiff was "Less experienced in research on plant-soil/landscape interactions" than the selected candidate. Request to Hire form (AA3) , Exhibit O.

37. Dean Jeffrey Seemann stated after commencement of the claim by the plaintiff that the plaintiff was not qualified for the position because he was not "on the cutting edge of bringing the highest level of scientific capability to the University of Rhode Island". Deposition of Dr. Jeffrey Seemann, p. 84, l. 1-19, Exhibit P.

38. Dean Jeffrey Seemann in a hire for the position of Assistant Professor, Habitat Restoration Ecology, in 2004, hired the second ranked candidate, a woman, who, per the Request to Hire form had "Research experience not as strong as the selected candidate." Laura A. Meyerson New Hire Form USP-2 and Request to Hire form, Exhibit T.

## B. ADVANCE Grant

39. The University of Rhode Island, beginning some time prior to September 25, 2002 began, by and through its employees, certain faculty and staff, to produce a proposal to the National Science Foundation (NSF) with the title of the proposed project being "ADVANCE Institutional Transformation Award: A Change in the Culture at the University of Rhode Island. Cover Sheet for Proposal to the National Science Foundation, p. 1, Exhibit U.

40. The proposal (ADVANCE) to the NSF requested the amount of $3,749,647 for the 60 months starting on 04/01/03, approximately $750,000 per year. Cover Sheet for Proposal to the National Science Foundation, p. 1, Exhibit U; ADVANCE University of Rhode Island publication, Exhibit V.

41. The proposal (ADVANCE) to the NSF was dated Sept 25 2002. Cover Sheet for Proposal to the National Science Foundation, p. 2, Exhibit U.

42. The ADVANCE program's goal was and is to substantially increase the number of ranked women faculty in the STEM departments with STEM being science, technology, engineering and math. NSF 02-121 ADVANCE Institutional Transformation Proposal: *A Change in the Culture at the University of Rhode Island*, p. 1, Exhibit W.

43. Dean Seemann, at the time of the search for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry, was fully aware of the ADVANCE proposal and had written in support of the ADVANCE Institutional

Transformation Program proposed. Letter from Jeffrey Seemann, PhD to Dr. Alice Hogan, ADVANCE Program Director, dated September 23, 2002, Exhibit X.

44. Provost and Vice President for Academic Affairs, Beverly Swan, at the time of the search for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry, was fully aware of the ADVANCE proposal and had written in support of the ADVANCE Institutional Transformation Program proposed. Letter from Beverly Swan to ADVANCE Program, dated September 24, 2002, Exhibit Y.

45. Dr. Cathy Roheim who was at the time of the search for the position of Assistant/Associate Professor of Terrestrial Biogeochemistry an Associate Dean in Dean Seemann's Office was aware of and subsequently directly involved in the ADVANCE program. Deposition of Dr. Cathy Roheim, p. 36, l. 16-p. 37, l. 1; p. 38, l. 6-p. 39, l. 9, Exhibit Z.

46. The ADVANCE program requires, for multi-year grants, annual reporting at least 90 days before the end of the annual budget. ADVANCE *Program Solicitation*, p. 22 (§ VII, C.) , Exhibit A(2nd).

47. Pursuant to the Cooperative Agreement between the NSF and the University of Rhode Island, the University of Rhode Island must maintain a uniform database of quantitative indicators of activity and progress including the number and percent of women faculty in science/engineering by department. Cooperative Agreement No. SBE-0245039, p. 4 (§I. C. 7) , Exhibit B(2nd).

48. Pursuant to the Cooperative Agreement between the NSF and the University of Rhode Island, the level of continuing NSF support will be negotiated with the University of Rhode Island annually and continuation of NSF support will depend upon an annual review of accomplishments, availability of funds, and scientific progress towards the goals of the project. Cooperative Agreement No. SBE-0245039, p. 6 (§I. E. 2. b.) , Exhibit B(2nd).

C. **Custom In Hiring Process.**

49. The defendant University of Rhode Island produced in discovery the following documentation:

a. all documentation pertaining to any position search where the "Selected" candidate, as listed on the University of Rhode Island Request to Hire form (Form AA3) refused/declined the offer of the position from January 1, 2000 through the present for academic positions comparable to the position sought by the plaintiff.

b. all documents pertaining to any position search where the search was concluded without a hire from January 1, 2000 through the present for academic positions comparable to the position sought by the plaintiff.

c. all documents relating or pertaining to any position search where an applicant for the position was an internal candidate from January 1, 2000

through the present for academic positions comparable to the position sought by the plaintiff.

50. Plaintiff, Josef Gorres, has reviewed all of the documentation regarding position searches wherein the "selected" candidate did not accept the offer of employment and/or the search "failed". Affidavit of Dr. Josef Gorres, Exhibit A.

51. Plaintiff, Josef Gorres, has compiled a summary of the outcomes of the searches for which documentation was produced. Affidavit of Dr. Josef Gorres, Exhibit A.

52. There were 58 position searches covered by the documents produced by the defendants. Of those searches, 29 were concluded by hiring a subsequently ranked candidate (19 hires of the second ranked candidate, 7 hires of the third ranked candidate, 1 hire each of the fourth and fifth ranked candidate) and 28 searches failed. In those searches that failed 11 failed after the first candidate declined and offers were made to subsequent candidates who subsequently declined. In 13 cases, withdrawals and determinations by the search committee or the department left no qualified, interviewed candidates after the top candidate declined. In 3 failed searches, the search committee or department determined that none of the applicants were qualified. In 2 failed searches, the search committee or the department did not make the determination of a failed search. In one of these two searches, financial reasons may have played a role. The other search was the search for a Terrestrial Biogeochemist, the position Dr. Gorres had applied for. Affidavit of Josef Gorres and Graphs attached thereto. Affidavit of Dr. Josef Gorres, Exhibit A.

D. **<u>Prior Acts Of Gender Motivation</u>**

**b. Hire of Bridget Ruemmele.**

53. The University of Rhode Island, in 1991, hired Dr. Bridget Ruemmele, a female, into the position of Assistant/Associate Professor, Turfgrass Improvement. Affidavit of Bridget Ruemmele, Exhibit C(2nd), Request to Hire (AA3) for of Assistant/Associate Professor, Turfgrass Improvement, Memorandum from Robert H. Miller to Harold "Cap" Smith dated December 7, 1990, Exhibit D(2nd).

54. Dr. Ruemmele was not the first ranked candidate as determined by the Search Committee and as presented on the Request to Hire form and as admitted by the Dean of the College. Request to Hire (AA3) for of Assistant/Associate Professor, Turfgrass Improvement, Exhibit E(2nd), Memorandum from Robert H. Miller to Harold "Cap" Smith dated December 7, 1990, Exhibit D(2nd).

55. Dean Miller's selection of Bridget Ruemmele for the position was motivated by "affirmative action reasons". Memorandum from Robert H. Miller to Harold "Cap" Smith dated December 7, 1990, Exhibit D(2nd).

56. Dr. Richard Casagrande told Bridget Ruemmele, during her interview process as an applicant for the position of Assistant/Associate Professor, Turfgrass Improvement, that unless they could find something wrong with her they had to hire her because she was a woman. Affidavit of Bridget Ruemmele, Exhibit C(2nd).

**b. Hire of Kimberley Brosofske.**

57. The University of Rhode Island, in 2000, hired Dr. Kimberley Brosofske, a female, into the position of Assistant Professor, Forest Ecologist. Request to Hire (AA3) for Assistant Professor, Forest Ecologist, Exhibit F(2nd), Letter to Dr. Kimberley Brosofske from Dean William Wright dated February 21, 2000, Exhibit G(2nd).

58. Dr. Peter Paton was the Chair of the search Committee for the hire for the position of Assistant Professor, Forest Ecologist. Request to Hire (AA3) for Assistant Professor, Forest Ecologist, Exhibit F(2nd), Affidavit of Dr. Peter Paton, Exhibit H(2nd).

59. During the course of the search for the position of Assistant Professor/Forest Ecologist, the search committee concluded that Dr. John Lichter, a male candidate, was the best candidate for the position. Affidavit of Dr. Peter Paton, Exhibit H(2nd).

60. Dr. Kimberley Brosofske was the listed first choice and selected candidate for the position of Assistant Professor/Forest Ecologist. Request to Hire (AA3) for Assistant Professor, Forest Ecologist, Exhibit F(2nd).

61. Dr. John Lichter was not placed as the selected candidate and Dr. Kimberley Brosofske was placed as the selected candidate because William Wright, the Dean of the College of Resource Development, stated to Dr. Peter Paton that the upper administration at the University of Rhode Island would not accept a male

candidate and that no candidate except the female candidate would be hired. Affidavit of Dr. Peter Paton, Exhibit H(2nd).

62. Dr. Kimberley Brosofske was the selected candidate on the University of Rhode Island Request to Hire form for the position of Assistant Professor/Forest Ecologist solely due to the requirement placed by the dean that a female was to be the selected candidate. Affidavit of Dr. Peter Paton, Exhibit H(2nd).

**c. Non-hire for position of Assistant or Associate Professor, Victor J. Baxt Chair.**

63. In 2000, the University of Rhode Island sought to hire into the position of Assistant or Associate Professor, Victor J. Baxt Chair. Request to Hire (AA3) for Assistant or Associate Professor, Victor J. Baxt Chair, Exhibit I(2nd).

64. The search for the position of Assistant or Associate Professor, Victor J. Baxt Chair, resulted in Shelley L. Anna, a woman, being ranked first, Peter J. Ludovice, a man being ranked second and David C. Venerus, a man, being ranked third. Request to Hire (AA3) for Assistant or Associate Professor, Victor J. Baxt Chair, Exhibit I(2nd).

65. All three candidates listed on the AA3 form for the position of Assistant or Associate Professor, Victor J. Baxt Chair were deemed highly qualified and eminently suited to hold the Victor J. Baxt Chair. Letter to Professor Richard Brown, Chair, Department of Chemical Engineering, from Arijit Bose, Chair, Victor J. Baxt Chair Search Committee dated April 14, 2000, Exhibit J(2nd).

66. The first and second candidates for the position of Assistant or Associate Professor, Victor J. Baxt Chair declined the offer of the position. Request to Hire (AA3) for Assistant or Associate Professor, Victor J. Baxt Chair, Exhibit I(2nd).

67. The position of Assistant or Associate Professor, Victor J. Baxt Chair was subsequently offered to the third ranked candidate, David C. Venerus. Request to Hire (AA3) for Assistant or Associate Professor, Victor J. Baxt Chair, Exhibit I(2nd), Email from David Venerus to Provost Beverly Swan dated July 26, 2000, Exhibit K(2nd).

68. While an offer was pending to David C. Venerus, the Provost for the University of Rhode Island determined that the position was unable to be filled and included in her reasoning the need for diversity. Memorandum from M. Beverly Swan to Thomas Kim, Dean, College of Engineering dated July 7, 2000, Exhibit L(2nd).

69. The provost's action of extending the search with a pending qualified candidate caused such concern regarding the propriety of the provost's action that the Affirmative Action Office and Human Resources for the University requested the chair of the search committee to consult with the University's counsel to make sure that the actions had not exposed the University from a legal perspective. Email from Dr. Arijit Bose to Provost Swan and Dean Kim dated July 21, 2000, Exhibit M(2nd).

## D. University Of Rhode Island As An Entity In Contract.

70. The University of Rhode Island on May 14, 2004 was a party to a contract with Pro-Change Behavior Systems, Inc. in which the University was a named party and signatory through its Assistant Vice President, J. Vernon Wyman. Agreement dated May 17, 2004 between The University of Rhode Island and Pro-Change Behavior Systems, Inc., Exhibit N(2nd).

Respectfully submitted:
JOSEF GORRES
By and through his attorney

David S. Cass, #5044
194 Waterman Street
Providence, RI 02906
(401) 272-2627
Fax: (401) 272-2708

## CERTIFICATION

I hereby certify that I a true copy of the foregoing document was mailed, first class mail, postage prepaid this 30th day of November 2005 to:

Jeffrey Michaelson, Esquire
Michaelson & Michaelson
P.O. Box 622
North Kingstown, RI 02852

Timothy Dodd, Esquire
215 Broadway
Providence, RI 02903