UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEF GORRES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF RHODE ISLAND and THE RHODE ISLAND BOARD OF GOVERNORS FOR HIGHER EDUCATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 04-319-T |

**OBJECTION TO REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

Defendants,[1] The University of Rhode Island and the Rhode Island Board of Governors for Higher Education hereby Object to the Report and Recommendation of the United States Magistrate Judge dated February 3, 2006.

## INTRODUCTION

A. Nature of Suit.

The Complaint in this matter is filed on behalf of Plaintiff, Josef Gorres, against Defendants "The University of Rhode Island" and the Rhode Island Board of Governors for Higher Education. The Complaint, generally, alleges unlawful discrimination arising from Plaintiff's unsuccessful application for a tenure-track position at the University of Rhode Island. Plaintiff alleges that the University's failure to offer him the position after the job was declined by another applicant, a

---

[1] The "Defendants" are referred to as separate entities solely for the purpose of convenience, given that there are two separately named Defendants in this matter. However, the Board of Governors does not, by thus addressing the legal issues in this extant Motion for Summary Judgment, concede that there are, in fact, two separate legal entities Defendant in this matter.

younger (than Plaintiff) female, constituted unlawful discrimination. Plaintiff alleges that he was ranked second of three 'finalists' who were given on-campus personal interviews.

Plaintiff's allegations include:

COUNT I: Unlawful refusal to hire based upon gender, age and nationality, R.I. Fair Employment Practices Act ("FEPA"), R.I.G.L. 28-5-1, *et seq.*

COUNT II: Unlawful refusal to hire based upon gender, age and nationality R.I. Civil Rights Act ("CRA"), R.I.G.L. 42-112-1, *et seq.*

COUNT III: Unlawful refusal to hire based upon Age, Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*

COUNT IV: Unlawful refusal to hire based on gender and nationality, Title VII, 42 U.S.C. §2000e, *et seq.*

B. Basis of Motion for Summary Judgment and Motion to Dismiss.

Defendants moved, pursuant to Rule 56, Fed. R. Civ. Proc., that Summary Judgment enter in their favor as to all Counts. The University of Rhode Island moved, pursuant to Rule 12(b)(6), Fed. R. Civ. Proc., that claims against it be dismissed.

The basis of the Motions include:

a. Plaintiff cannot, as a matter of law, establish unlawful discrimination under state or federal anti-discrimination laws;

b. Plaintiff had not exhausted administrative remedies against the Board of Governors for Higher Education where its administrative Charge of Discrimination was against the University of Rhode Island; and

c. The University of Rhode Island is not a viable defendant.

The District Court denied the Motion for Summary Judgment to the extent that it relied upon the theory that Plaintiff had not exhausted administrative remedies against the Board of Governors (point b, above) and referred the remaining issues to the United States Magistrate Judge for consideration.

C. The United States Magistrate Judge's Report and Recommendation.

The United States Magistrate Judge recommended that Defendants' Motion for Summary Judgment be GRANTED insofar as Plaintiff alleged that he was discriminated against based upon his age and/or his national origin.

The United States Magistrate Judge recommended that Defendants' Motion for Summary Judgment be DENIED insofar as Plaintiff alleged that he was discriminated against based upon his gender.

The United States Magistrate Judge recommended that the University of Rhode Island's Motion to Dismiss based upon the fact that it is not an entity which can be sued be DENIED.

## DISCUSSION

This matter presents a perfect example of the importance and value of defined, yet flexible standards which govern a discrimination claim brought pursuant to federal anti-discrimination statutes and their state law counterparts. Such standards are well-developed and well-reasoned. Their existence provides a framework within which claims can be analyzed and, where appropriate, disposed of summarily, without the kind of free-for-all *ad hoc* approach that would render Summary Judgment at best unpredictable and at worst impossible.

While the United States Magistrate Judge's Report and Recommendation rightly notes that the standards must be applied flexibly and sensibly, rather than mechanically, the United States Magistrate Judge is, respectfully, too quick to overlook established standards and too flexible to give those standards any practical utility. As a result, the United States Magistrate Judge's Report and Recommendation, while thoughtful and extensive, misses the legal mark and should not be accepted by this Court.

A. The United States Magistrate Judge Erred In Finding A Material Issue Of Fact Concerning The Allegation Of Reverse Discrimination.

The elements of a *prima facie* case of discrimination in a failure to hire case include the following: (1) Plaintiff is a member of a protected class[2]; (2) Plaintiff applied for an open position; (3) Plaintiff was not selected; and (4) after rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802 (1973). *St. Mary's Honor Center. V. Hicks*, 509 U.S. 502, 506 (1993).[3]

The United States Magistrate Judge, as the parties, focused his attention primarily on the fourth prong of the *McDonnell Douglas prima facie* test. However, even before the analysis is out of the gate, the United States Magistrate Judge effectively abandons it, noting that the test is "not intended to be rigid, mechanized or ritualistic." Report and Recommendation, p.12, *quoting Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). The United States Magistrate Judge then goes on to restate the essential inquiry as whether discrimination has played a role in an employment decision.

1. The Reliance On Eastridge V. R.I. College Is Misplaced.

Without even attempting to apply the *McDonnell Douglas* first step analysis, the Report and Recommendation relies on the case of *Eastridge v. R.I. College*, 996 F.Supp. 161 (D.R.I. 1998) to

---

2 In reverse discrimination cases, Courts have modified the *McDonnell Douglas* framework (*e.g. Mitchell v. City of Wichita,* ___ F.3d ___, (slip op. 04-3199)(10th Cir. 2005)), to permit the non-minority plaintiff to satisfy this element if there is some other indicia of potential discrimination.

3 In pool hiring situations, Courts have restated the fourth prong as *the employer filled the position by hiring another individual with similar qualifications. Gu v. Boston Police Dept.*, 312 F.3d 6, 11 (1st Cir. 2002), *citing Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000); *Wynn &Wynn P.C. v. Mass. Comm'n Against Discrimination*, 729 N.E.2d 1068, 1078, n.22 (Mass. 2000). In "pool hiring" cases, this modification respects *McDonnell Douglas*, while recognizing that such a scenario would, otherwise, preclude meeting the fourth element of a *prima facie* case.

effectively discard the fourth prong analysis required by *McDonnell Douglas*. The reliance on *Eastridge* is misplaced, both as a matter of law and of fact.

The United States Magistrate Judge suggests that the *Eastridge* court "did not mechanically apply the fourth prong" of the *prima facie McDonnell Douglas* test as applied in a reverse discrimination case. In fact, the *Eastridge* Court rejected, *in its entirety*, the *McDonnell Douglas* analysis: "In short, attempting to cram a reverse discrimination case into the *McDonnell Douglas* framework is not a reasonable approach in these cases." 996 F.Supp at 167. The Court, in *Eastridge* opted intead to use a *gestalt* approach to determine whether there are facts, independent of any accepted framework, under which discrimination could be inferred. This approach ignores a vast body of caselaw emanating from the United States Supreme Court which specifically rejects such an unstructured analysis.

Thus, not only did the *Eastridge* Court not "mechanically apply the *McDonnell Douglas* test and throw out the plaintiff's claim for failing to satisfy the fourth prong of a *prima facie* case," (Report and Recommendation at 14), but the *Eastridge* Court did not apply, mechanically or not, *any* of the *McDonnell Douglas* factors, and not based on the fourth prong, but on the *first*, which requires Plaintiff to show he is a member of a protected class. *See* 996 F.Supp at 166-67.

In his own right, the United States Magistrate Judge justifies effectively discarding the fourth prong by stating that "[i]f this Court accepted Defendants' position, they would arguably be entitled to summary judgment in every case where a search is terminated without making a hire regardless of the circumstances." Report and Recommendation, p. 14. This conclusion is not accurate – in the event that an unsuccessful applicant had 'direct' evidence of discrimination, the *McDonnell Douglas* analysis is unnecessary. In fact, the whole point of the *McDonnell Douglas* analysis is to provide a framework for analysis where there is *no* direct evidence of discrimination. Thus, if, to use the

United States Magistrate Judge's scenario, there was absolutely no direct evidence of discrimination, the Plaintiff were not hired, and the vacancy did not remain open, why shouldn't the Employer be entitled to Summary Judgment? Why let a case proceed to trial where there is no direct evidence of discrimination, and only an unsuccessful applicant who alleges he or she did not get a job which nobody got because of his or her gender, age, race, etc. as the case may be? That is precisely the purpose of the *McDonnell Douglas* framework.

By way of more specific example, the United States Magistrate Judge suggests that, if Defendants' position in this matter is accepted, an institution could obtain Summary Judgment against a reverse discrimination plaintiff by closing a search every time a preferred minority candidate didn't accept. That conclusion goes much farther than Defendants' position. If a plaintiff were to allege that a minority candidate were *less* qualified than him or her, but got the initial offer, that would be a pool hiring case of alleged reverse discrimination and, under those circumstances, the claim would potentially be viable regardless of what happened after the minority candidate, in the example, declined. That is not this case, and that is precisely the point: Plaintiff has no legitimate complaint regarding the offer to Dr. Bernhardt and cannot prove reverse discrimination in a 'second search' where no offer was made to anyone.

In addition, the United States Magistrate Judge failed to focus on a critical factual distinction between this case and *Eastridge*. While the United States Magistrate Judge noted that there are numerous efforts at the University of Rhode Island to attract and retain female faculty, there is no evidence that, *as to this position*, those policies and practices played any role. In *Eastridge*, unlike in this case, the stated reasons for selecting the minority applicant over the plaintiff was *explicitly* based upon his potential contribution to faculty diversity – in other words, there was an explicit statement in that case that the minority candidate was offered the job over a non-minority equal

*because he was a minority*. 996 F.Supp. at 164. This critical factual point is wholly absent from the present case.

Because the Court, in *Eastridge*, failed to follow the *McDonnell Douglas* analysis, it did not note that this direct evidence of potential reverse discrimination against Professor Eastridge might well, even within the *McDonnell Douglas* analysis, defeat summary judgment.[4] However, notwithstanding these substantial factual differences, the United States Magistrate Judge effectively hammered the square peg that is this case into the round hole of the *Eastridge* analysis – an ill fit which Defendants respectfully submit is not consistent with the law as it currently exists.

2. The United States Magistrate Judge's Prong Four Analysis Is Faulty.

The United States Magistrate Judge further erred in finding a fact issue regarding the application of the fourth prong of a *McDonnell Douglas prima facie* case, which requires that the Plaintiff show that after rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. Report and Recommendation, p.16. As Defendants understand the analysis, the United States Magistrate Judge analyzes whether, *after Dr. Bernhardt rejected the position*, it remained open. This analysis, respectfully, focuses on the wrong time period.

The Magistrate Judge effectively split the search in this matter in two: The 'first' search resulted in an offer to Dr. Bernhardt. There appears to be no claim arising from that initial offer, in that Plaintiff, although not necessarily agreeing, does not contest the Defendants' contention that Dr. Bernhardt was more qualified. The issue then becomes whether there was a 'second' search when Dr. Bernhardt declined. The United States Magistrate Judge spends some considerable time

---

[4] Nor was it necessary, given the analysis, for the *Eastridge* Court to analyze that case as a pool hiring case.

highlighting evidence, taken in the light most favorable to the non-moving party, from which it could be concluded that there was, in fact, a 'post-Bernhardt' second search. Based on this conclusion, the United States Magistrate Judge concludes that, as to the second search, there is a trialworthy fact issue regarding the fourth prong, *to wit*, whether, after the rejection, the position remained open and the employer continued to search for persons with plaintiff's qualifications. That analysis misapplies *McDonnell Douglas*.

It was Defendants' contention that, upon the selection of Ms. Bernhardt, Plaintiff was rejected. The "failure to hire" Dr. Gorres occurred at that moment, and, since Dr. Gorres did not, for purposes of the Motion for Summary Judgment, contend that he was equally qualified to Dr Bernhardt, it was Defendants' contention that the fourth prong could not, as a matter of law, be met. The Plaintiff argued that, once Dr. Bernhardt declined, a new search was created and, in that 'second' search, Plaintiff claims his gender defeated him. The United States Magistrate Judge concluded, as Defendants understand it, that there is a 'trialworthy issue' as to whether, after Bernhardt declined the position, the position remained open.

Respectfully, if the Court is inclined to treat the post Bernhardt activity as a 'second' search, the relevant *McDonnell Douglas* inquiry is whether *after Dr. Gorres* was rejected, the position remained open. There is no dispute that the 'rejection' of Dr. Gorres, if that is what is was, in the 'second' search coincided with the closing of the search. Under these circumstances, there is no dispute, and no trialworthy issue as to whether, after *Plaintiff's* rejection, the position remained open. That is the relevant time period, not the period between Dr. Bernhardt's declination and Plaintiff's rejection. By focusing on the wrong time period, the United States Magistrate Judge, respectfully, reached the wrong conclusion.

Under the well-established *McDonnell Douglas* test, Plaintiff has failed to establish a *prima facie* case and, as a result, the Motion for Summary Judgment should be granted.

3. This Is Not A Case Where It Is Necessary Or Appropriate To 'Tailor' Application Of Prong Four.

The Report and Recommendation effectively ignores the rather straightforward application of the *McDonnell Douglas* analysis in favor of a 'tailored' interpretation, ostensibly to avoid a "mechanical" application of the analysis. In so doing, the United States Magistrate Judge effectively ignored the teachings of the United States Supreme Court and misapplied the cases which he cited. In each case which the United States Magistrate Judge relied upon, the specific facts of the case make traditional Prong Four analysis inapplicable and, *under those circumstances*, a judicial 'tailoring' necessary and appropriate. In this case, no such tailoring is necessary and, therefore, no such tailoring is appropriate.

The United States Magistrate Judge cites the case of *Wiener v. Polaroid Corp.*, 790 F.Supp. 363 (D.Mass. 1992)[5] for the proposition that the fourth prong of the *prima facie* case in a reverse discrimination case must be "tailored" and "flexible," not "rigid." The United States Magistrate Judge quotes the *Wiener* Court as stating, as to the fourth prong, the requirement being that "Plaintiff [must] show that the employer's decision 'occurred under circumstances giving rise to an inference' of discrimination." Report and Recommendation, p. 15, *quoting Wiener*, 790 F.Supp. at 365-66.

The facts of the *Wiener* case stand in marked contrast to the current case: Plaintiff, a woman, was offered a position. When she sought to negotiate a different position, allowing her to split her duties between two cities due to her impending marriage, the employer agreed to think about such an arrangement. When Plaintiff later 'accepted' the split position, the employer advised that the split

[5] Which *granted* Defendant's Motion for Summary Judgment.

position was not being offered, and indicated that the original, not split position would be advertised within Polaroid. Ultimately, within three weeks, the employer modified the position (combining it with another position) and hired a female. It was in this context that the issue came up as to whether the 'position' which Plaintiff sought (the split position) remained open.

Given this unique scenario, in assessing whether a *prima facie* case , under *McDonnell Douglas* had been made, the *Wiener* Court noted that the Supreme Court recognized that, in some circumstances "the four prong test 'is not necessarily applicable in every respect to differing factual situations.'" *Id.* at 366, *quoting McDonnell Douglas* 411 U.S. at 803. In this case, unlike *Wiener*, there are *not* unique factual circumstances which render the fourth prong inapplicable and, as such, the flexibility which the *Wiener* Court employed is neither necessary nor appropriate. Here, the position was closed at the same time that Dr. Gorres was rejected in the 'second' search. There was no 'other' position, no 'combined' position, no position of any kind which justifies or supports abandoning the fourth prong requirement that the position stay open.

The United States Magistrate Judge cites *Stokes v. Perry*, 1997 U.S. Dist. LEXIS 20197 (S.D.N.Y. 1997).[6] In *Stokes*, Plaintiff alleged racial discrimination in his employment at the Department of Defense. After a bench trial, the District Judge entered judgment for Defendant. The context in which the consideration of the fourth prong of *McDonnell Douglas* came up in *Stokes* was Plaintiff's claim that he had received poor evaluations, based on his race, which prevented him from being promoted. Because the 'rejection' of plaintiff occurred at the exact moment that another person was hired, he could not prove that the position remained open. It was in this context that the

---

[6] The United States Magistrate Judge cited the case as 1997 WL 782131 (S.D.N.Y. 1997).

*Stokes* Court considered how to deal with this 'literal inapplicability' of the fourth *McDonnell Douglas* prong:

> I therefore conclude that, in a case such as this, where the fourth prong of McDonnell Douglas is literally inapplicable because plaintiff failed to be promoted in a *pool hiring situation*, the plaintiff, in order to make out a prima facie case of disparate treatment, must show that the employment decision was made under some circumstances which indicate that race was a factor.

*Id.* at 12 (emphasis added). In short, *Stokes* was a pool hiring case. This case is not. Unlike in *Stokes,* the fourth prong *is* literally applicable to Plaintiff's situation.

The United States Magistrate Judge cites *Holmes v. Bevilaqua*, 794 F.2d 142 (4th Cir. 1986), at page 15 of his Report and Recommendation. In *Holmes*, the Fourth Circuit affirmed the District Court's dismissal of a race discrimination claim. Plaintiff alleged that he was denied a promotion based upon his race. The search for the position, in that case, included an initial screening and a narrowing to five finalists, who were each rated. Plaintiff, in that case, was tied for third in the ratings, and the number five rated applicant was hired.

The *Holmes* Court noted that, absent "direct evidence" of discrimination, the Plaintiff was required to meet the *McDonnell Douglas* tests to establish a *prima facie* case of discrimination. As the Court noted: "Leaving the job open is the element that *justifies the presumption* of racial discrimination and makes a *prima facie* case. *Holmes*, 794 F.2d at 146 (emphasis added). The Court continued: "By not hiring a qualified black and continuing to search for a qualified person other than a black, the employer has acted in such a way as to justify the presumption of discrimination and to require such employee to explain its action." *Id.* This is precisely the point the Defendants have made in this matter: The burden does not shift to the Defendants to justify their decision *unless* a *prima facie* case is established pursuant to the *McDonnell Douglas* four prong framework.

The *Holmes* Court only excused Plaintiff from meeting the literal requirements of the fourth prong of the *McDonnell Douglas prima facie* case because, in a pool hiring situation, the discrimination, if there is any, manifests itself at the moment that the hire of another candidate occurs, making it impossible to apply a requirement that the job stay open. In this case *if* Plaintiff were complaining that the job offer to Dr. Bernhardt discriminated against him, then *Holmes* might apply. But, where Plaintiff, and the United States Magistrate Judge have effectively ignored the 'first' search and restricted their discrimination analysis to the 'second' search, discarding the fourth prong as *Holmes* did is inappropriate.

Thus, the cases which the United States Magistrate Judge relies on to avoid the straightforward, literal application of the fourth prong of the *McDonnell Douglas prima facie* analysis, each have specific factual differences which justify and even necessitate such departure. None of those necessitating factors are present in this matter, and, therefore, the Report and Recommendation's analysis is, respectfully, deficient.

4. <u>The Burden Shifting Analysis Is Faulty.</u>

The Report and Recommendation goes on to determine that the proffered non-discriminatory reason for not hiring Dr. Gorres satisfies the second prong of the *McDonnell Douglas* analysis, constituting a legitimate, non-discriminatory reason for not hiring Plaintiff. Report and Recommendation, p. 18.

The United States Magistrate Judge then assesses whether the Plaintiff has adduced sufficient evidence which could support a factual finding that the articulated reason for his non-hire was a pretext. Again, respectfully, the United States Magistrate Judge's cast his net beyond the reaches of applicable precedent and failed to apply extant caselaw to the facts.

The United States Magistrate Judge's initial assessment of the 'pretext' analysis fall back on *Eastridge*, finding that, since it is possible that someone might not believe Dean Seeman, a fact issue exists as to his true motivation. That, respectfully, would preclude Summary Judgment in *any* case where a plaintiff alleges that a decision maker was motivated by illegal discriminatory *animus*. If credibility were enough to defeat Summary Judgment, the mere allegation would be sufficient to get any case to trial. That is precisely why the Supreme Court requires some substantial evidence *connected to the hiring decision at issue* from which such an inference can appropriately be made. Pretext simply cannot be demonstrated by suspicion. The *Plaintiff*, under *McDonnell Douglas*, has a burden of proof at that stage which requires some positive showing of evidence that his particular employment situation was affected negatively by discrimination. In this case, the United States Magistrate Judge cited no evidence directly linked to Plaintiff.

The Report and Recommendation looked at the mandatory affirmative action procedures regarding the selection of finalists for on-campus interviews. These events preceded the initial (if there were two) search. There is no fact related to how the on-campus interview list was created that could reasonably be the basis for inferring that Dr. Gorres was not hired because he was a man. In fact, Dr. Gorres was on both lists, and, for purposes of this suit, does not contend that he was as qualified as Dr. Bernhardt. Therefore, the motivation of the Affirmative Action Office in rejecting an initial list has no evidentiary value in determining what happened in the hiring process. There is absolutely no evidence linking the actions of the Affirmative Action Office to the hiring decision. Even if the Court were to suppose that there is a viable fact issue regarding whether some discriminatory *animus* against men motivated the *Affirmative Action Officer* to reject the initial list of on-campus interviewees, there is nothing that connects that potential bias to Dean Seeman, who

made the decision in this matter.[7]

Second, the United States Magistrate Judge found that there is a factual issue as to whether Plaintiff was qualified for the position. Whether he was qualified or not is not enough, in and of itself, under applicable precedent, to survive a Motion for Summary Judgment. Again, if an allegation that a Plaintiff was qualified for a position were enough to defeat Summary Judgment, then Summary Judgment would be rendered an impossibility because, in order to establish the elements of the cause of action, the Plaintiff must plead that he is qualified. It is hard to imagine a situation where that allegation could not be supported by *some* affiant, including the Plaintiff her/himself, that she/he was qualified for the position sought. Qualification, in and of itself, is not enough, respectfully, to prove pretext where the employer has (as the United States Magistrate found) offered a legitimate non-discriminatory reason for the non-hire.

The United States Magistrate Judge further finds a triable fact issue to exist because Plaintiff was deemed "acceptable" for the position and was a "close second" in the final balloting. Report and Recommendation, p.20. Respectfully, neither of these 'facts' create any inference of discrimination by the decisionmaker, Dean Seeman. First of all, being "acceptable" to the Search Committee, but not the first choice, does not even suggest an inference that the second place finisher is "acceptable" to the person making the decision. It simply does not bear on the criteria being used by the decisionmaker. Second, coming in a "close second" on a vote by the Search Committee choosing among three candidates does not imply or impart any qualitative ranking as between the first and second place finishers.

---

[7] The 'worst' thing the Affirmative Action Officer can be accused of accomplishing is the inclusion of a woman more qualified than Plaintiff in the on-campus interview list.

Furthermore, neither the Plaintiff nor the United States Magistrate Judge even consider the question of, if Plaintiff were the victim of reverse gender discrimination, why it could be concluded, under any circumstances, that absent such discrimination Plaintiff would have been hired? Dr. David, the 'third place' finisher, like Dr. Gorres, was deemed 'acceptable,' and, though he was not a 'close second' in the balloting, based on Plaintiff's Exhibit I, had qualifications which seem far better suited to Dean Seeman's criteria – which criteria the United States Magistrate Judge deemed to establish, for *McDonnell Douglas* purposes, a legitimate, non-discriminatory basis for Plaintiff's non-hire.

Even accepting the less than glowing assessment of Dr. Gorres as "acceptable" and the "close second" finish, permitting a jury, on these facts, to conclude that Plaintiff did not get the job because he was the victim of discrimination necessarily puts the fact finder into the position of a 'supertenure' committee, because it necessarily puts into their hands the decision that the Plaintiff was qualified for the job, and *more so than Dr. David.* This is not the province of the factfinder where there is no evidence that a) a less qualified person was offered the job or b) the job stayed open after Plaintiff's rejection *and the employer continued to seek applicants with Plaintiff's qualifications*. It is only if either of the two possibilities exists that it can be said with the requisite degree of confidence that any discrimination which may have existed could, as a matter of law, have prevented Plaintiff from getting a position. Where, as here, Plaintiff cannot prove either scenario, the 'fact' question of whether Plaintiff is 'qualified' cannot be established based upon the Search Committee's assessment or vote.

The United States Magistrate sees the existence of a fact issue which defeats Summary Judgment in matters unrelated to and far removed from this search. The United States Magistrate Judge notes that the University participates in an ADVANCE grant program which provides funding

for the express purpose of increasing the number of women in certain fields. The reliance on this grant as evidence of discrimination against Dr. Gorres is both stunning and inappropriate. If, in fact, the existence of the ADVANCE grant is evidence sufficient to defeat Summary Judgment in a reverse discrimination case, then the existence of federally and state mandated affirmative action programs would, in and of themselves, likewise defeat Summary Judgment in any reverse discrimination case. The implication that participating in affirmative action efforts, *which do not permit or encourage discrimination in the actual hiring of anyone*, can, in and of themselves, support a finding of reverse discrimination is a chilling and unsettling prospect. As a matter of law, relying on the existence of such programs as evidence of discrimination is error.

Finally, the United States Magistrate Judge finds that comments from Dean Seeman, after the offer was made to Dr. Bernhardt and before she declined, regarding the value of diversity as evidence from which a finder of fact could determine that Plaintiff was discriminated against. These positive nods to diversity, where the offer to a woman was outstanding and no allegation is made that the offer to her, and not to Plaintiff, was the result of discrimination, do not inform or support a potential finding of discrimination against Plaintiff in a 'second' search. As with the existence of affirmative action efforts, if a positive reference to diversity in a non-discriminatory offer to hire can support an inference of discrimination in a subsequent failure to hire, then it appears that no reverse discrimination claim could ever be subject to Summary Judgment if an employer has made any affirmative effort to attract minority applicants. The law simply does not permit that great a leap.

5. The United States Magistrate Judge Did Not Base His Recommendation On Any Finding of Direct Evidence of Discrimination.

The entire analysis which the United States Magistrate Judge relied on in making his Report and Recommendation is devoid of any so-called 'direct' evidence of discrimination which would take the analysis out of the *McDonnell Douglas* framework. As such, absent satisfaction of the

criteria considered by that framework, there is no basis to deny Summary Judgment.

Briefly, the *McDonnell Douglas* analysis may be avoided where there is so-called 'direct evidence' of discrimination. *See U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711 (1983). The First Circuit has recognized that an overly broad definition of 'direct evidence' would effectively swallow the entire *McDonnell Douglas* analysis. *Fernandes v. Costa Brothers Masonry, Inc.*,199 F.3d 572 (1st Cir. 1999). To avoid the *McDonnell Douglas* framework, the Plaintiff must "demonstrate with a high degree of assurance that the employment decision of which he complains was the product of a mixture of legitimate and illegitimate motives." *Fernandes*, 199 F.3d at 581, *citing Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

The Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 123 S.Ct. 2148 (2003), makes it clear that, in this context, "direct" evidence does not exclude "circumstantial" evidence. However, the Eighth Circuit, in *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004), notes that *Desert Palace* does not relieve a plaintiff of making a showing, circumstantial or not, of a "specific link between the alleged discriminatory animus and the challenged decision." The *Griffith* Court found nothing inconsistent with *Desert Palace* in the definition of 'direct' evidence as "not the converse of circumstantial evidence," but, rather, as describing "the causal strength of the proof." 387 F.3d at 736:

> A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext. *See, e.g., Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 971 (8th Cir. 1994). This formulation is entirely consistent with *Desert Palace.* Thus, we conclude that *Desert Palace* had no impact on prior Eighth Circuit summary judgment decisions.

Respectfully, URI believes that the *Griffith* Court's analysis is appropriate insofar as it respects both

*Desert Palace* and *McDonnell Douglas*.

In sum, it appears clear that, whatever else the Report and Recommendation may have concluded, it did not conclude that any statements attributed to anyone are *direct evidence* that Plaintiff, Josef Gorres, was denied a job due to discrimination.

B. U.R.I. Is Not A Legal Entity Which May Be Sued.

The United States Magistrate Judge concludes that the "University of Rhode Island," as such, is an entity which may be sued in its own right. This conclusion is based upon the United States Magistrate's Judge's observation that the University of Rhode Island, as such, has been both a named plaintiff and a named defendant in numerous lawsuits. The United States Magistrate Judge further notes that both stationery and contracts bear the name "University of Rhode Island."

Respectfully, while Defendants do not dispute that the "University of Rhode Island" has, in fact, been a party to the various matters which the United States Magistrate Judge has referenced, that fact does not support a finding that either a) the "University of Rhode Island" is a viable legal defendant where the issue is squarely raised or b) that the "University of Rhode Island" *and* the "Board of Governors for Higher Education" can *both* be sued *in the same matter* as if they are separate legal entities.[8]

The University of Rhode Island is operated by the Board of Governors for Higher Education ("Board of Governors") pursuant to R.I.G.L. 16-32-2; 16-59-1(a). The Board of Governors is a legal entity which may sue and be sued. R.I.G.L. 16-59-1(a).

---

[8] Respectfully, the fact that, in other cases, the "University of Rhode Island" has been a named Plaintiff or Defendant, and the fact that the "University of Rhode Island" is the ostensible employer/contract party in various situations, does not create a legally viable entity. The Board of Governors has not taken the position that it does not operate under the name University of Rhode Island. Rather, the Board is taking the position that, when the issue is raised, the law requires that the proper legal party be designated.

Based upon the citations of both the Plaintiff and the United States Magistrate Judge, it does not appear that any court has permitted suit to proceed against two separate iterations of the same entity as if they were two separate defendants. Further, no contract has been identified where *both* the Board of Governors and the University of Rhode Island are parties.

In short, Defendants believe that the University of Rhode Island, as such, is not a legal entity which can be sued in its own right but, rather, a fictitious name under which the Board of Governors operates a University.

Rule 17, Fed. R. Civ. Proc. provides, in part:

> (b) CAPACITY TO SUE OR BE SUED. ... The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.

Under these circumstances, respectfully, the denial of the "University of Rhode Island's Motion to Dismiss was error.

In this case, as the Court is aware, the "Defendants" have raised, and wish to preserve, the issue of whether an administrative Charge of Discrimination against the University of Rhode Island preserves rights/exhausts administrative remedies for purposes of suit against the Board of Governors. The District Court judge has already ruled on this issue, as the United States Magistrate Judge has pointed out (Report and Recommendation, p. 8). Therefore, in order to preserve this issue, it is not an academic question whether the 'University of Rhode Island,' *as such*, is a named party in this suit.

CONCLUSION

For the foregoing reasons, Defendants respectfully pray that this Court reject in part the Recommendation of the United States Magistrate Judge and grant Summary Judgment in favor of Defendants on all Counts and as to the University of Rhode Island, Dismiss the Complaint in all respects.

Respectfully submitted,
The University of Rhode Island and the Rhode Island Board of Governors for Higher Education,
by their attorneys,

Dated: 2/17/06

Jeffrey S. Michaelson, Esq. (#3299)
Michaelson & Michaelson
P.O. Box 622
7454 Post Road
North Kingstown, R.I. 02852
Telephone: (401) 295-4330
Facsimile: (401) 295-5220

Timothy J. Dodd (JE)

Timothy J. Dodd, Esq. (#3150)
215 Broadway
Providence, R.I. 02903
Telephone: (401)272-3900
Facsimile: (401)331-1440

**CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing document was mailed, by regular mail, postage prepaid, on this 17 day of Feb., 2006, to the following attorney(s) of record:

David S. Cass
194 Waterman Street
Providence, R.I. 02906