UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEF GORRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-319-T |
| | ) | |
| THE UNIVERSITY OF RHODE ISLAND and the RHODE ISLAND BOARD OF GOVERNORS FOR HIGHER EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' PRETRIAL MEMORANDUM**

A. PARTIES

Plaintiff is Josef Gorres. He is represented by David Cass.

Defendants are "The University of Rhode Island" and the Rhode Island Board of Governors for Higher Education. It is Defendant's position that the "University of Rhode Island" is not a legal entity distinct from the Board of Governors for Higher Education. However, the Court has permitted this suit to proceed against these two named defendants as if separate entities. Without waiving any legal positions, Defendants are represented by Jeffrey Michaelson and Timothy Dodd, who will serve as Trial Co-Counsel.

B. FACTS

This matter arises from Plaintiff, Josef Gorres' unsuccessful application for a tenure-track position as an Assistant/Associate Professor of Terrestrial Biogeochemistry at the University of Rhode Island. Under the University's search procedure, both the search committee and the Dean can end the process by declining to recommend one or more applicants to the next level. The search

committee can recommend ending the search or it can forward its recommendations to the Dean for hiring consideration. The Dean can accept or reject the recommendations of the search committee in whole or in part. If the Dean approves the recommended appointment he/she will, in turn, recommend the appointment to the Provost. On the other hand, if the Dean rejects the recommendations of the search committee, the search will be ended.

In this case, the matter was assigned to a Search Committee, the University advertised the position, and a variety of individuals applied for the position. Among these was Plaintiff, Joseph Gorres, a male who was over 40 years old at the time of the search which forms the basis of his complaint. Gorres is of German extraction. Gorres came to the University of Rhode Island in 1992 as a lecturer and per course instructor and, at the time of his application for the position at issue, was an Associate Research Professor (non-tenure track).

The Search Committee included colleagues of Dr. Gorres in the Natural Resource Science Department, including his longtime collaborator, Search Committee chair Dr. Jose Amador. Following review of applications received in response to a published advertisement, the Committee, pursuant to University policy, received permission to conduct six telephone interviews. Thereafter, also pursuant to University policy, the Search Committee submitted its proposed list of three candidates for on campus interviews.

The proposed list was submitted to the University's Affirmative Action Office for review. The associated paperwork was required to indicate both the reasons that particular candidates were selected for on-campus interview, and the reasons other candidates were not. The proposed list of on-campus interviewees contained three men, among them Dr. Gorres, who was listed second. This proposed list was rejected by the Affirmative Action Office because it failed to articulate sufficiently objective reasons for the selections/non-selections. The form was returned so that the Committee's

rationale for its selections could be more objectively articulated.

Rather than provide legitimate objective criteria for its initial selections, the Committee, instead, proposed a different list. This, second, list, included a female applicant who was not on the initial submission in the top spot and excluded the third listed male from the initial submission. Dr. Gorres was, again, listed second. In addition, the second submission set forth a different criteria.

The second submission was approved and three applicants were granted on-campus interviews, among them Dr. Gorres, Emily Bernhardt and Mark David.

Upon completion of personal interviews, the Search Committee selected Dr. Bernhardt for the position, using the standard URI form and specifying their reasons that the other two personal interviewees were not selected. In Plaintiff's case, he was not selected because he lacked research experience in plant-soil/landscape interactions.

The recommendation of the Search Committee was forwarded to the Dean of the College of Environment and Life Sciences, Jeffrey Seemann, who determined that a job offer to Bernhardt was appropriate. Dean Seemann therefore forwarded the recommendation to the Provost, consistent with University procedure. The Provost decided that the position should be offered to Dr. Bernhardt, and the offer was made.

Plaintiff has not challenged the University's contention that Dr. Bernhardt had greater qualifications than he had, nor has he alleged that the offer to Dr. Bernhardt discriminated against him.

Following the offer to Dr. Bernhardt, and while she was considering it, Plaintiff claims that Dean Seemann made a number of comments at a Natural Resource Sciences Department meeting in March of 2003. These comments included: the positive benefits of having a woman join the faculty; that having a spousal hire policy would help attract faculty and, particularly so, where URI was trying

to be competitive in convincing a highly qualified female to accept a job offer; that diversity is a positive factor in the Department; that a tenure track faculty of all white men is not diverse; that someone was a “bright, young guy”; that someone was a “bright, young mind”; and that “young scientists” need mentoring. Plaintiff also alleges that, at the same meeting, Professor Roheim stated that it would be good for the students to have a female tenured professor.

Ultimately, Dr. Bernhardt turned down the job offer at URI. The search was not continued and no further offer was made to any other candidate. Dean Seemann indicates that the decision not to continue the search and the reason no offer was made to Plaintiff was the result of Dean Seemann’s conclusion that Plaintiff did not have sufficient qualifications for the position. Specifically, Dean Seemann felt that Plaintiff’s caliber as a research scientist was not at the level he was looking for and that Plaintiff’s research, being “intertwined” with the research of other existing faculty, would not bring sufficient diversity to the Department. Dean Seemann was seeking faculty who could increase the national stature, recognition and accomplishments of the University, and he concluded that offering the position to Plaintiff would not achieve that goal.

Plaintiff initiated charges before the Rhode Island Commission for Human Rights alleging gender, age and national origin discrimination pursuant to state and federal law. He obtained Right to Sue letters. The Charge of Discrimination was against the “University of Rhode Island.” Suit was thereafter commenced, also against the “University of Rhode Island.” The suit was subsequently amended to add the Rhode Island Board of Governors for Higher Education as a separate defendant.

## C. CLAIMS AND DEFENSES

Plaintiff’s Amended Complaint includes the following claims:

COUNT I: Unlawful refusal to hire based upon gender, age and nationality, R.I. Fair Employment Practices Act (“FEPA”), R.I.G.L. 28-5-1, *et seq.*

COUNT II: Unlawful refusal to hire based upon gender, age and nationality, R.I. Civil Rights Act ("CRA"), R.I.G.L. 42-112-1, *et seq*.

COUNT III: Unlawful refusal to hire based upon Age, Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq*.

COUNT IV: Unlawful refusal to hire based on gender and nationality, Title VII, 42 U.S.C. §2000e, *et seq*.

Claims for age and nationality discrimination were disposed of by way of a Motion for Summary Judgment. Therefore, as Defendants understand it, the case will proceed to trial on gender discrimination claims only contained in Counts I, II and IV.

Defendant has raised the following defenses:

1. <u>No Discrimination.</u> Defendants deny that the failure to hire Dr. Gorres was the result of discrimination based upon his gender or otherwise.

2. <u>Failure to Exhaust</u>. The Board of Governors assert that an administrative complaint against the "University of Rhode Island" does not exhaust administrative remedies against the Board of Governors. This defense was asserted by way of a Motion to Dismiss, which was denied by the Court, but Defendant continues to assert this defense so as to preserve the legal issue.

3. Plaintiff's claims, in whole or in part, are barred by his failure to mitigate damages.

4. This Court lacks subject matter jurisdiction over some or all of Plaintiff's claims.

D. <u>DAMAGES</u>

Plaintiff has alleged damages in the form of lost income (backpay), lost benefits and seeks to be placed in the position to which he applied.

E. ISSUES[1]

1. Evidence of Affirmative Action Efforts. Plaintiff has conducted discovery, and produced discovery which relates to URI's efforts, in general, and in particular, to affirmative action efforts at URI, the existence of certain funding grants which encourage the hiring of women and minorities and, otherwise, relate to matters not directly related to the search at issue in this lawsuit. It is presumed that Plaintiff's interest in this information is for the purpose of establishing a bias in favor of women which somehow played a role in the decision relative to the position which Plaintiff sought. Defendant believes that this information/evidence is not relevant to this matter, because there is no factual evidence connecting these general requirements/policies to the hiring decision in this matter. To permit a jury to make an inference that a general, statutory and other policy in favor of increasing the applicant pool of women and minorities, within a framework which prohibits discrimination in employment and hiring, would be, Defendants respectfully submit, inappropriate.

2. Evidence Related To Other Hires. Plaintiff's discovery indicates some interest/intention in offering evidence of other hires at URI as bearing on the search to fill the position which Plaintiff sought. Defendants believe that this evidence should not be admitted, as it is not probative of the reasons Plaintiff was not hired into the position, and would, potentially (if admitted) require that the merits of each hire which Plaintiff seeks to rely on as implying, in his case, discrimination, be effectively

[1] Defendants expect to present a formal Motion in Limine to seek the Court's preliminary ruling on a number of evidentiary issues raised in this section, and precluding Plaintiff's reference to such issues in the course of opening statements or evidence.

litigated. In other words, for each female who Plaintiff alleges received a preference, URI would be required to put into evidence the entire search process in order to prove that the hire's gender was not the reason for the hire.

3. Statistical Evidence. During the course of discovery, Plaintiff performed some analysis of records produced by Defendants related to numerous searches over a number of years. Based upon his analysis, it is believed that Plaintiff will seek to demonstrate that there is an overall bias in favor of women at the University which not only exists, but played some role in the hiring decision at issue in this matter. Defendants do not believe that evidence of this type is relevant or probative relative to this plaintiff, nor does the evidence constitute sufficiently developed statistical evidence to support a theory of disparate impact (as opposed to disparate treatment), which, in any case, is not Plaintiff's theory in this case.

4. URI as Defendant. Defendants believe that URI is not a distinct legal entity which can be sued in its own name.

5. Failure to Exhaust, Board of Governors. The administrative charge of discrimination in this matter did not name the Board of Governors. According, Defendants have argued, in unsuccessful dispositive motions, that the federal claims cannot proceed against the Board.

6. The Offer to A More Qualified Candidate Defeats a *Prima Facie* Case. Defendants believe that the offer to a more qualified candidate defeats a claim of discrimination.

7. The Failure to Seek Applicants of Plaintiff's Qualifications After His Rejection. Defendants believe that the failure to seek applicants of Plaintiff's qualification after his rejection defeats Plaintiff's *prima facie* case.

8. Has URI Articulated a Legitimate, Non-Discriminatory Reason for its Decision?

Dean Seemann testified that Dr. Gorres was not sufficiently qualified for the position.

9. Can Plaintiff Prove Pretext?

If Plaintiff meets his burden of establishing a *prima facie* case, and Defendants articulate a legitimate non-discriminatory reason for the decision, can Plaintiff prove that the articulated reason is a pretext?

10. Proximate Cause Issue.

Defendants do not believe there is any evidence upon which any factfinder could conclude that, if Plaintiff was a woman, with his exact qualifications, he would have been offered the position. Furthermore, Defendants do not believe that, if Plaintiff can establish that the position was not offered to a man based upon the desire to hire a woman, he can prove that, as a matter of fact or law, he would have been hired over the other male applicant/finalist.

11. Mixed Motive Analysis.

Under a mixed-motive analysis, Plaintiff would have to prove that his gender was a motivating factor in the decision not to offer him the position.

12. Same Decision Defense.

If the jury believes that gender was a motivating factor in the decision not to hire Dr. Gorres, there will be an issue of whether, absent such consideration, the same decision would have been made, *to wit*, that Dr. Gorres would not be offered the position.

13. Is There Direct Evidence of Discrimination?

Can Plaintiff prove, by direct evidence, that unlawful discrimination caused him not to be offered the position.

14. Ambiguous/Stray/Post-Offer Comments.

Plaintiff has focused on a number of comments which Defendants contend cannot, as a matter of law, constitute direct evidence of discrimination, including ambiguous comments, stray remarks and post-offer 'platitudes' regarding the offer recipient, a female applicant.

15. Use of Surreptitious Tape.

Following the offer of the position to Dr. Bernhardt, Plaintiff surreptitiously taped (audio) an NRS Department meeting. At that meeting, the pending offer to Dr. Bernhardt was discussed and the desire to have her accept the offer. Defendants believe that the audiotape and a transcription should not be referred to or offered into evidence. Dr. Gorres was present at the meeting and can testify as to his memory of who said what at the meeting, if otherwise admissible. To the extent that he refreshes his memory with such tape, Defendants may, or may not, refer to it.

16. Allegations of Age and National Origin Discrimination.

Plaintiff's Amended Complaint includes allegations that he was unlawfully discriminated against based upon his age and his national origin. Those claims were disposed of by way of a Motion for Summary Judgment. Defendants believe that these allegations and the facts upon which they were based should be excluded from the trial in this matter.

17. Mitigation.

Plaintiff has a duty to mitigate, and his efforts in that regard are, therefore, an issue in the trial of this matter.

18. Other Gender Discrimination Complaints/Issues by Dr. Gorres. Dr. Gorres has, in

connection with this position and another position, claimed that he was discriminated against based upon his gender. These claims are potentially probative of his 'victim' mentality and may bear on the jury's crediting, or not, his testimony regarding what he alleges was discrimination in this matter.

F. ARGUMENTS

The following are concise summaries of arguments made in support of the defenses set forth in Section C, *supra*:

1. No Discrimination.

Plaintiff's allegations are of 'disparate treatment' discrimination. He claims that he was denied a hire/promotion because of his gender. There are three principal methods to prove disparate treatment discrimination.

a. Framework – Circumstantial Case.

The three-part burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) and its progeny may be relied on when a plaintiff relies on circumstantial or indirect evidence. The initial burden is on the plaintiff to establish a *prima facie* case. If he/she does, then the employer must produce evidence of some legitimate, nondiscriminatory reason for the employment decision. If that happens, the burden shifts back to the Plaintiff to prove that the articulated reason is pretextual, and that the true reason was discriminatory.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000e-2(a)(1). The Rhode Island Fair Employment Practices Act, R.I.G.L. 28-5-1, *et seq.* and Civil Rights Act, R.I.G.L. 42-112-1, *et*

*seq.* extend like protection.

The analytical framework for determining whether discrimination has occurred depends upon whether there is "direct" evidence of discrimination, as that term of art is defined, or not. If not, the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) applies. *See also DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13(R.I. 2005)(same for R.I. CRA, FEPA).

In brief, the *McDonnell Douglas* framework is as follows: First, the plaintiff has the burden of proving a *prima facie* case of discrimination. Second, if the plaintiff succeeds, the defendant may articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, if the defendant provides evidence of such a reason, the plaintiff must prove that the reason offered by the defendant is, in fact, a pretext for discrimination. *Id*. at 801-804. *Burdine*, 450 U.S. at 252-253.

i. *Prima Facie* Case

The elements of a *prima facie* case of discrimination in a failure to hire case include the following: (1) Plaintiff is a member of a protected class; (2) Plaintiff applied for an open position; (3) Plaintiff was not selected; and (4) after rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. 411 U.S. at 802. *St. Mary's Honor Center. V. Hicks*, 509 U.S. 502, 506 (1993). In pool hiring cases, the four elements have been alternatively stated: (1) Plaintiff is a member of a protected class; (2) Plaintiff applied for an open position; (3) Plaintiff was not selected; and (4) *the employer filled the position by hiring another individual with similar qualifications*. *Gu v. Boston Police Department*, 312 F.3d 6, 11 (1st Cir. 2002).[2]

---

[2] If Plaintiff's claim were that the offer to a more qualified candidate, in the first instance, was evidence of discrimination against him, that claim fails. *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 246 (1981)(employer has discretion to choose among equally qualified

ii. Defendant's Non-Discriminatory Reason

*If* Plaintiff meets his burden of going forward with evidence which, if credited, establishes a *prima facie* case of discrimination, Defendant must offer evidence tending to establish that its reasons for its employment decision were non-discriminatory. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

iii. Pretext

If evidence of a non-discriminatory reason for the employment decision is offered, Plaintiff has the burden of establishing that the proffered reason is a pretext, and that the true reason for the decision was based upon the Plaintiff's gender. *McDonnell Douglas* at 801-804. *Burdine*, 450 U.S. at 252-253.

Great respect and deference is given to institutions of higher education to set their own standards and aspirations in establishing job requirements and considering applicants against those standards. *Villanueva v. Wellesley Coll.*, 930 F.2d 124, 129 (1st Cir. 1990)(Court not appropriately tasked to sit as a sort of "super-tenure" committee); *Compare Rossy v. Roche Prods., Inc.*, 880 F.2d 621, 625 (1st Cir. 1989)("Our role is not to second-guess the business decisions of an employer, imposing our subjective judgments of which person would best fulfill the responsibilities of a certain job.").

b. Framework – Mixed Motive Case.

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989) set forth a mixed-motive analysis which applies if a plaintiff can produce evidence that the employer was motivated by a combination of legal and illegal factors in making the employment decision. If the plaintiff can prove that unlawful discrimination played a "motivating part" in the employer's decision, the employer, to

---

candidates).

escape liability, must prove that it would have come to the same employment decision even if it hadn't considered the unlawful factor.[3]

c. Framework – Direct Evidence

A plaintiff can also prove disparate treatment discrimination by adducing direct evidence of discrimination. *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711 (1983). What is, and what is not, direct evidence has been the subject of much judicial discourse since the phrase was used by Justice O'Connor in her concurring opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989).

i. Direct Evidence.

In *Desert Palace, Inc. v. Costa*, 123 S.Ct. 2148 (2003), the Supreme Court made it clear that, in this context, "direct" evidence does not exclude "circumstantial" evidence. However, the Eighth Circuit, in *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004), notes that *Desert Palace* does not relieve a plaintiff of making a showing, circumstantial or not, of a "specific link between the alleged discriminatory animus and the challenged decision." The *Griffith* Court found nothing inconsistent with *Desert Palace* in the definition of 'direct' evidence as "not the converse of circumstantial evidence," but, rather, as describing "the causal strength of the proof." 387 F.3d at 736:

> A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext. *See, e.g.*, *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 971 (8th Cir. 1994). This formulation is entirely consistent with *Desert Palace*. Thus, we conclude

[3] Proof of the 'same outcome,' however, does not preclude equitable and certain other relief.

> that *Desert Palace* had no impact on prior Eighth Circuit summary judgment decisions.

In *Ayala-Gerena*, the First Circuit stated that "we do know that, at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by nondecisionmakers or statements made by decisionmakers unrelated to the decisional process itself." 95 F.3d at 96.

Without adopting a bright line test, the First Circuit has described what *is* direct evidence of discrimination: "evidence is 'direct' . . . when it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57 (1st Cir. 2000)(*citations omitted)*.

ii. Stray Remarks/Ambiguous Statements.

In *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572 (1st Cir. 1999), the First Circuit stated that innocuous statements do not constitute direct evidence:

> Courts that take the classic position have contrasted direct evidence with, *inter alia*, ambiguous statements, and have indicated that the latter will not suffice (citations omitted). Courts that take either the animus plus or animus position place great emphasis on the strength of the proof of discriminatory animus (citations omitted). In our judgment, inherently ambiguous statements, without more, cannot supply the strong evidence that these courts rightfully demand as a prerequisite to mixed-motive analysis. We conclude, therefore, that a statement that plausibly can be interpreted two different ways - one discriminatory and the other benign - does not directly reflect illegal animus and, thus, does not constitute direct evidence.

*Fernandes*, 199 F.3d at 583 (citations omitted).

2. U.R.I. as Defendant.

Defendants have unsuccessfully argued, in dispositive motions, that the University is not a viable legal defendant. This argument is repeated here inasmuch as the Defendants wish to preserve the issue.

It is Defendants' position that a) the "University of Rhode Island" is not a viable legal

defendant where the issue is squarely raised and b) the "University of Rhode Island" *and* the "Board of Governors for Higher Education" cannot *both* be sued *in the same matter* as if they are separate legal entities.[4]

The University of Rhode Island is operated by the Board of Governors for Higher Education ("Board of Governors") pursuant to R.I.G.L. 16-32-2; 16-59-1(a). The Board of Governors is a legal entity which may sue and be sued. R.I.G.L. 16-59-1(a).

While suits have proceeded against "both," it does not appear that any court has permitted suit to proceed against two separate iterations of the same entity as if they were two separate defendants.

In short, Defendants believe that the University of Rhode Island, as such, is not a legal entity which can be sued in its own right but, rather, a fictitious name under which the Board of Governors operates a University.

3. Failure to Exhaust.[5]

As a general rule, the exhaustion of administrative remedies before the EEOC is a prerequisite to a suit under Title VII. 42 U.S.C. Sec. 2000e-5(c); *Lebron-Rios v. U.S. Marshal Service*, 341 F.3d 7, 12 (1st Cir. 2003).

[4] Respectfully, the fact that, in other cases, the "University of Rhode Island" has been a named Plaintiff or Defendant, and the fact that the "University of Rhode Island" is the ostensible employer/contract party in various situations, does not create a legally viable entity. The Board of Governors has not taken the position that it does not operate under the name University of Rhode Island. Rather, the Board is taking the position that, when the issue is raised, the law requires that the proper legal party be designated.

[5] The Court has previously denied Defendants' Motion to Dismiss and Motion for Summary Judgment to the extent that they asserted that a) an administrative Charge of Discrimination against the University of Rhode Island did not include the Board of Governors and b) that suit could not proceed against both the "University" and the Board of Governors simultaneously.

The Rhode Island Supreme Court has stated that it will look to analogous federal Title VII employment cases in interpreting the Rhode Island Fair Employment Practices Act. *Newport Shipyard v.R.I. Com'n for Human R.*, 484 A. 2d 893-898-899 (R.I. 1984 ). The Rhode Island Supreme Court, in Power v. City of Providence, 582 A.2d 895 (R.I. 1990) affirmed that the exhaustion requirements apply to claims brought under the Rhode Island FEPA.

It is Defendants' position that the administrative Charge of Discrimination against the "University of Rhode Island" does not exhaust administrative remedies against the Board of Governors.

4. Jurisdiction if Federal Claims Fail.

If the Court determines that the Title VII claims fail, then the only remaining claim will be based upon state law. Under those circumstances, Defendants respectfully suggest that this court will lack subject matter jurisdiction over the remaining, state law, claim(s).

## G. PENDING MATTERS

There are no pending matters except as set forth in the "Issues" Section (Section E) of this Pretrial Memorandum, to the best of counsel's knowledge. Defendants do expect to make a Motion in Limine with respect to those evidentiary issues identified in this Pretrial Memorandum.

## H. ESTIMATED TIME OF TRIAL

Defendants believe that the trial in this matter will take five to six trial days.

Respectfully submitted,
The University of Rhode Island and
The Rhode Island Board of Governors for
Higher Education,
By their attorneys,

Date: October 16, 2006

/s/ Jeffrey S. Michaelson

Jeffrey S. Michaelson, Esq. (#3299)
Michaelson & Michaelson
P.O. Box 622
7454 Post Road
North Kingstown, R.I. 02852
Telephone: (401) 295-4330
Facsimile: (401) 295-4330

/s/ Timothy J. Dodd

Timothy J. Dodd, Esq. (#3150)
215 Broadway
Providence, R.I. 02903
Telephone: (401)272-3900
Facsimile: (401)331-1440

**CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing document was mailed, by regular mail, postage prepaid, on this 16 day of October, 2006, to the following attorney(s) of record:

David S. Cass
194 Waterman Street
Providence, R.I. 02906

/s/ Jeffrey S. Michaelson