UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEF GORRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-319-L |
| | ) | |
| THE UNIVERSITY OF RHODE ISLAND and the RHODE ISLAND BOARD OF GOVERNORS FOR HIGHER EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' SUPPLEMENTAL PRETRIAL MEMORANDUM**[1]

Defendants hereby supplement their Pretrial Memorandum and Proposed Voir Dire filed on or about October 16, 2006:

**A. Witness List.**

Defendants are not certain what evidence, if any, will be required in defense of the claims Plaintiff will present. However, based upon Defendants' current understanding, it is believed that some or all of the following witnesses may be called to testify regarding the subject matter indicated:

1. Dean Jeffrey Seeman. Dean Seeman is expected to testify that he made the ultimate decision to offer the position to Emily Bernhardt, and when Dr. Bernhardt declined the offer, Dr. Seeman thereafter closed the search. He is expected to testify that, although the other interviewed applicants had sufficient background and experience to merit an on-campus interview, none were sufficiently qualified for the position for a variety of reasons which Dean Seeman will explain. These include, for example, academic scholarship, quality and quantity of publication. Dean Seeman will explain the goals of the University in its hiring process with respect to this position and generally.

2. Associate Dean Dennis Nixon. Dean Nixon is expected to testify as to his consultations with Dean Seeman and the Dean Roheim concerning the application process, the decision to offer

[1] This Supplement is based upon differences between Judge Lagueux' standard civil Pretrial Order and Judge Torres' Order and is submitted in light of the transfer of the file to Judge Lagueux.

the position to Dr. Bernhardt and the decision to close the search without making a further offer after Dr. Bernhardt declined. Dean Nixon is expected to testify regarding the nature and context of statements made in meetings concerning Dr. Bernhardt's qualifications and how her hiring would enhance the University. Dean Nixon may testify regarding the context and nature of matters related to Dr. Gorres' nationality if those subjects are permitted into evidence.

3. Jose Amador. Dr. Amador is expected to testify as to his close, longstanding relationship with Dr. Gorres including co-publishing numerous articles. He is expected to testify regarding the search process, his input and regarding various documents and emails. Dr. Amador's testimony is expected to reveal a close friendship with Dr. Gorres which would be expected to create a bias in favor of his friend.

4. Robert Gillis. Mr. Gillis was the University's Affirmative Action Officer at the time of the search. He is expected to testify regarding the search process, including the standard process review by the Affirmative Action Office pursuant to University policy. Mr. Gillis is expected to testify that, as part of process, he requested that objective criteria be provided to justify the failure to include Dr. Bernhardt in the initial list of individuals selected for on-campus interviews. He is expected to testify regarding a complaint by Dr. Gorres claiming that he was discriminated against based upon his gender and, depending on the Court's evidentiary rulings, possibly regarding a complaint that Dr. Gorres was discriminated against based upon his nationality. Mr. Gillis is expected to testify that he investigated Dr. Gorres' discrimination claims and found them to be without merit.

5. Arthur Gold. Professor Gold was a member of the Search Committee Member and, if called, is expected to describe the search process.

6. Thomas Husband. Professor Husband is expected to testify regarding the search process. Professor Husband is expected to testify regarding the issue of whether, after Dr. Bernhardt declined the position, it could have or should have been offered to Dr. Gorres or the third applicant who was interviewed on campus. Professor Husband is expected to testify that he has a close relationship with Dr. Gorres.

7. Dean Cathy Roheim. Dean Roheim is expected to testify as to her consultations with Dean Seeman and the Dean Nixon concerning the application process, the decision to offer the position to Dr. Bernhardt and the decision to close the search without making a further offer after Dr. Bernhardt declined. Dean Roheim is expected to testify regarding the nature and context of statements made in meetings concerning Dr. Bernhardt's qualifications and how her hiring would enhance the University. Dean Roheim may testify regarding the context and nature of matters related to Dr. Gorres' nationality if those subjects are permitted into evidence.

8. Keith Killingbeck. Professor Killingbeck was on the Search Committee. If called, he is expected to testify regarding the search process in general and, in particular, concerns he had as a result of the failure to included Emily Bernhardt as a finalist in the initial, subsequently abandoned list of on-campus interviewees.

9. Paula Valliere. Ms. Valliere worked in the Affirmative Action Office. She is expected to testify regarding the AAO review and processing of the Search, as well as Dr. Gorres' complaints of discrimination.

10. Other Search Committee Members/Applicants. At this time, Defendants do not anticipate calling other Search Committee members as witnesses, but, because it is possible, and in the event that a potential witness list is read to the jury, the following individuals could potentially be called by Defendants: Kimberly Brosofske, Allison Roberts, Mark Stolt. Defendants do not anticipate calling any other applicants for the position, but, in the event that the Court wishes to inform the jury of individuals who may be discussed during the trial, Defendants do expect the names of Emily Bernhardt and Mark David to figure in the testimony.

11. Josef Gorres. On cross-examination, Dr. Gorres is expected to testify regarding his work history, mitigation efforts and the facts surrounding his claims in general.

**B. Exhibit List.**

Defendants expect to offer some or all of the following exhibits in this matter:

a. 2/16/01 Letter, Gorres to Swan.

b. 2/27/02 Search Plan.

c. 3/5/02 Suggested Advertisement.

d. 3/12/02 Ad Request form with advertisement.

e. 4/15/02 Application, Josef Gorres, w/references, resume, etc.

f. 4/16/02 Application, Emily S. Berhnardt.

g. 5/2/02 Application, Mark David.

h. undated Application, J.E. Barratt.

i. 7/1/02 Memo, Husband to Seeman, Search Committee has identified top 6 candidates.

j. 5/13/02 AA2, List of Applicants.

k. 8/28/02 Request to Fill, Assistant/Associate Professor.

l. undated Job Requisition.

m. 11/20/02 Memo, Amador to Valliere, Initial Ranking, with "not approved."

n. 11/26/02 Memo, Amador to Gillis, Initial Ranking, approved.

o. 12/13/02 Memo, Gold to NRS Dept., comments on candidates.

p. 12/24/02 Memo, Amador to Seeman, comments on candidates.

q. 12/30/02 AA3 Form, Bernhardt selected.

r. 3/31/03 Letter, Gorres to Annunziato, re: claim of discrimination (grievance).

s. 4/16/03 Memo, Husband to Seeman: Bernhardt declined.

t. 5/20/03 Letter, Gold to Gorres, search terminated unfilled.

u. 7/25/03 Memo, Golet to Seeman, Request for Approval to Search, Habitat Restoration Ecologist, with description and Justification.

v. 9/3/03 Memo, Seeman to Golet, re: permission to search, with CELS Checklist.

w. 11/13/03 Charge of Discrimination, University of Rhode Island (only)

x. 5/26/04 Right to Sue Letter, University of Rhode Island (only)

**C. <u>Proposed Jury Instructions.</u>**

In addition to standard jury instructions, Defendants propose the following jury instructions:

**1. Introductory Instruction.**

In this case the Plaintiff Josef Gorres makes a claim under a Federal Civil Rights statute that prohibits employers from discriminating against a prospective employee in the terms and conditions of employment because of the employee's race, color, religion, sex, or national origin.

More specifically, plaintiff claims that he was not hired for the position he sought by the defendant, the University of Rhode Island because of plaintiff's gender.

Plaintiff has not claimed that an offer to Dr. Bernhardt was the result of discrimination against him. Rather, he claims that, after Dr. Bernhardt turned down the job offer, the decision not to offer him the job was based on discrimination against him because he is a man.

Defendant denies that plaintiff was discriminated against in any way.

I will now instruct you more fully on the issues you must address in this case.

(Source: Third Circuit Model Jury Instructions.)

**2. Intentional Discrimination Required.**

In this case plaintiff is alleging that defendant did not hire him for the position he sought because he is a man. In order for plaintiff to recover on this discrimination claim against defendant, plaintiff must prove that defendant intentionally discriminated against plaintiff.

Although plaintiff must prove that defendant acted with the intent to discriminate, plaintiff is not required to prove that defendant acted with the particular intent to violate plaintiff's federal civil rights.

(Source: Third Circuit Model Instructions.)

**3. General Discrimination: Pretext.**

Plaintiff Josef Gorres accuses Defendant The University of Rhode Island of gender discrimination in violation of federal law. To succeed on this claim, plaintiff must prove by a preponderance of the evidence that defendant took adverse employment action against him because of his gender, because he is a man.

An "adverse employment action" is one that, standing alone, actually causes damage, tangible or intangible, to an employee. The fact that an employee is unhappy with something his or her employer did or failed to do is not enough to make that act or omission an adverse employment action. An employer takes adverse action against an employee only if it: (1) takes something of consequence away from the employee, for example by discharging or demoting the employee, reducing his or her salary, or taking away significant responsibilities; or (2) fails to give the employee something that is a customary benefit of the employment relationship, for example, by failing to follow a customary practice of considering the employee for promotion after a particular period of service. An adverse employment action by a supervisor is an action of the employer.

Plaintiff need not show that gender discrimination was the only or predominant factor that motivated defendant. In fact, you may decide that other factors were involved as well in defendant's decisionmaking process. In that event, in order for you to find for plaintiff, you must find that he has proven that, although there were other factors, he would have been hired for the position he applied for without the gender discrimination. An employer is free not to hire a prospective employee for any nondiscriminatory reason even if its business judgment seems objectively unwise. But you may consider the believability of an explanation in determining whether it is a cover-up or pretext for discrimination. In order to succeed on the discrimination claim, plaintiff must persuade you, by a preponderance of the evidence, that were it not for gender discrimination, he would have been hired for the job he sought.

Plaintiff is not required to produce direct evidence of unlawful motive. You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other evidence—for example, explanations that you find were really pretextual. "Pretextual" means false or, though true, not the real reason for the action taken.

(Source: Draft Pattern Jury Instructions for Cases of Employment Discrimination (Disparate

Treatment) For the District Courts of the United States Court of Appeals for the First Circuit.

NOTE: These draft instructions are a proposal advanced by Judge Hornby's chambers, and are not endorsed or approved by the Court.)

**4. General Discrimination: Mixed Motive.**

Plaintiff Josef Gorres accuses defendant The University of Rhode Island of gender discrimination in violation of federal law. Specifically, he claims that defendant took adverse employment action against him because of gender discrimination. To succeed on this claim, plaintiff must prove, by a preponderance of the evidence, that his gender was a motivating factor in defendant's decision not to hire him for the position he sought.

An employer is free to not hire an employee for any nondiscriminatory reason even if its business judgment seems objectively unwise. But you may consider the believability of an explanation in determining whether it is a cover-up or pretext for discrimination. To prove that gender was a "motivating factor," plaintiff must show that defendant used that consideration in deciding not to hire him for the position he sought.

Plaintiff need not show that gender discrimination was the only reason defendant did not hire him for the position he sought. But he must show that defendant relied upon gender discrimination in making its decision.

Plaintiff is not required to produce direct evidence of unlawful motive. You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other evidence—for example, explanations that you find were really pretextual. "Pretextual" means false or, though true, not the real reason for the action taken.

An adverse employment action by a supervisor is an action of the employer. An "adverse employment action" is one that, standing alone, actually causes damage, tangible or intangible, to an employee. The fact that an employee is unhappy with something his or her employer did or failed to do is not enough to make that act or omission an adverse employment action. An employer takes adverse action against an employee only if it: (1) takes something of consequence away from the employee, for example by discharging or demoting the employee, reducing his or her salary, or taking away significant responsibilities; or (2) fails to give the employee something that is a customary benefit of the employment relationship, for example, by failing to follow a customary practice of considering the employee for promotion after a particular period of service.

If you find that plaintiff has not proven by a preponderance of the evidence that defendant used plaintiff's gender in deciding not to hire him for the position he sought, your verdict must be for the defendant.

But if you find that plaintiff has proven by a preponderance of the evidence that his gender was a motivating factor in defendant's decision not to hire him for the position he sought, then the burden of proof shifts to defendant to prove by a preponderance of the evidence that it would nevertheless have taken the same action even if it had not considered plaintiff's gender.

If you find that defendant has not met its burden of proof, your verdict will be for the plaintiff.

(Source: Draft Pattern Jury Instructions for Cases of Employment Discrimination (Disparate Treatment) For the District Courts of the United States Court of Appeals for the First Circuit.

NOTE: These draft instructions are a proposal advanced by Judge Hornby's chambers, and are not endorsed or approved by the Court.)

**5. Burden of Proof.**

In this case it is the responsibility of the Plaintiff to prove every essential part of the Plaintiff's claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true. In deciding whether any fact has been proved by a preponderance of the evidence you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claim by a preponderance of the evidence, you should find for the Defendant as to that claim.

*In this case, if you find that Defendant discriminated against Plaintiff because he is a man, you must also find that, if Defendant had not discriminated against him, he would have been hired for the job. If you find that Defendant discriminated against men in this hiring decision, it is Plaintiff's burden to prove that he would been hired if there was no discrimination. If you find that Defendant discriminated against men in this hiring decision, but you find that, absent such discrimination, Defendant would have hired another person, or if you cannot determine which one of more than one candidate, including Plaintiff, Defendant would have hired absent any discrimination which you find, then you must return your verdict for the Defendant.*

(Source: Eleventh Circuit Pattern Jury Instructions *except for italicized portion*)

**6. Stray Remarks.**

Stray remarks about Plaintiff's gender or the gender of other applicants for the job do not constitute proof of discrimination. This means that references to Plaintiff's gender, or the gender of other applicants by persons not involved in the hiring decision, or statements made by those involved in the decision but that are unrelated to the decision, do not constitute evidence that Plaintiff's gender was a factor in the decision.

*Ayala-Gerena v. Bristol Myers-Squibb*, 95 F.3d 86 (1st Cir. 1996).

Respectfully submitted,

The University of Rhode Island and
The Rhode Island Board of Governors for
Higher Education,
By their attorneys,

Date: October 16, 2006

/s/ Jeffrey S. Michaelson

Jeffrey S. Michaelson, Esq. (#3299)
Michaelson & Michaelson
P.O. Box 622
7454 Post Road
North Kingstown, R.I. 02852
Telephone: (401) 295-4330
Facsimile: (401) 295-4330

/s/ Timothy J. Dodd

Timothy J. Dodd, Esq. (#3150)
215 Broadway
Providence, R.I. 02903
Telephone: (401)272-3900
Facsimile: (401)331-1440

**CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing document was mailed, by regular mail, postage prepaid, on this 27 day of February, 2007, to the following attorney(s) of record:

David S. Cass
194 Waterman Street
Providence, R.I. 02906

/s/ Jeffrey S. Michaelson