UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEF GORRES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF RHODE ISLAND and the RHODE ISLAND BOARD OF GOVERNORS FOR HIGHER EDUCATION,<br><br>Defendants. | ) | C.A. No. 04-319-L |

**DEFENDANT'S MOTION IN LIMINE**

Based upon pretrial discovery and Plaintiff's Pretrial Memorandum, Defendant, Rhode Island Board of Governors for Higher Education respectfully prays that the Court make preliminary rulings precluding reference to the items set forth below in Plaintiff's opening statement and, further that the Court make a preliminary determination that the matters set forth below, absent further foundation or basis for relevance, be ruled inadmissable at the trial in this matter.

LEGAL STANDARDS

> [T]he motion *in limine* is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings. It performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose.

*Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436 (7th Cir. 1997).

The Court's consideration of Motions *in limine* is primarily governed by the Federal Rules of Evidence. Generally, Rule 104 gives the district courts authority to decide preliminary questions regarding the admissibility of evidence.

Specifically, Defendants rely on the following provisions of the Rules of Evidence in making this Motion:

- Rule 402: Evidence which is not relevant is not admissible.
- Rule 403: Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
- Rule 404: Precludes evidence of 'bad character' or prior bad acts to prove a particular act.

## ARGUMENT

The hiring process employed in seeking to fill the position at issue is well-described in both parties' Pretrial Memoranda, and will not be repeated in detail in this Motion. What is critical, for purposes of this Motion, is that the process involved discrete individuals at the Search Committee level and that it appears undisputed that Dean Jeffrey Seemann made the ultimate decisions to a) offer the position to Emily Bernhardt and b) close the search when Dr. Bernhardt declined.

This Motion is based primarily on the disconnect between evidence which Defendant anticipates Plaintiff will offer and the actions of these individuals. In sum, Plaintiff apparently seeks to cast the shadow of various unrelated events over this Search in an effort to convince the jury that Plaintiff was mistreated.

## SPECIFIC MATTERS

### A. ADVANCE Grant.

Plaintiff's Pretrial Memorandum suggests that he will offer evidence of the existence of a so-called ADVANCE Grant which Plaintiff states had a goal of "substantially increas[ing] the number of ranked women faculty in the [science, technology, engineering and math] departments." Plaintiff's Pretrial Memorandum at 6. Plaintiff states that Dean Seemann and various other individuals with a

connection to the search at issue were aware of the original proposal for the ADVANCE Grant, had supported the proposal and/or were involved in the program. Plaintiff notes that, under the ADVANCE Program, there is a reporting requirement which includes *inter alia*, the number and percent of female faculty in science and engineering departments. Plaintiff asserts that continued funding under the ADVANCE program depends upon an annual review of accomplishments, availability of funds and scientific progress towards the goal of the project.

Essentially, it appears that Plaintiff seeks to use the mere *existence* of the ADVANCE Grant program as circumstantial evidence of discrimination against Dr. Gorres. Respectfully, the existence of the program, and various individual's knowledge of the ADVANCE Grant is insufficient to establish even an inference of discrimination. There is nothing in the ADVANCE Grant which requires or encourages reverse discrimination and, in fact, URI is not permitted, by state or federal law, in any number of statutes, regulations, contracts and the like, to discriminate. The entry into a program which mandates or encourages reverse discrimination would itself violate innumerable other requirements. Thus, Plaintiff is effectively asking the Court to permit the jury to infer reverse discrimination based upon a program which does not, itself, permit discrimination.

In the event that Plaintiff were permitted to offer evidence of the existence of the ADVANCE Grant as, itself, evidence of reverse gender discrimination, it would be incumbent upon URI to rebut that inference with substantial evidence regarding the requirements of, administration of, policies related to and all things pertaining to the *actual* operation of the ADVANCE Grant program, so as to establish that the ADVANCE Grant neither permits nor encourages reverse gender discrimination and, thus, does not circumstantially establish reverse gender discrimination in this case. Furthermore, there appears to be no direct evidence that any discriminatory conduct has been caused by, motivated or otherwise occurred by virtue of the fact that the University has committed to making affirmative

efforts to attract women into the faculty.[1]

*If*, on the other hand, Plaintiff had established direct evidence that the existence of the ADVANCE Grant program affected *this* job search, that would be a different matter. For example, if there were documents or testimony decisionmakers stated or suggested they were influenced by the existence of the ADVANCE Grant, or if third parties attempted to pressure the decisionmakers *in this search* based upon the existence of the ADVANCE Grant program, then that would be a different matter. However, to the best of Defendant's knowledge, there is no direct evidence linking the existence of the ADVANCE Grant program to *any* action by any person in this matter.

B. "Custom In Hiring Process."

Plaintiff's Pretrial Memorandum indicates that Plaintiff intends to offer his personal review of some fifty-eight hiring searches where the initial offeree did not accept the position since January 1, 2000 as probative of a "custom in hiring practice." In sum, based upon discovery obtained from URI, *Plaintiff* is expected to testify that, of these fifty-eight searches, in thirty-nine cases offers were made to another individual after the initial declination. Of the remaining searches, there were thirteen instances where, after the initial declination, there was nobody left to offer the position to. In two cases, none of the remaining choices were deemed qualified. In one case, according to Plaintiff, financial reasons "may have played a role." The remaining case was Plaintiff's.

Respectfully, the analysis Plaintiff offers sheds no light on the issues in this case. The universe of searches is not limited to Plaintiff's department. It involves a myriad of search committees, applicant pools, telephone and on-campus interviewees and one can only imagine the variety of skill-

[1] The existence of Affirmative Action plans, whether created voluntarily, statutorily or by court order do not permit discrimination in actual hiring decisions and have been accepted by a myriad of court decisions. *E.g., Johnson v. Transportation Agency, Santa Clara County, Cal*, 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987) (Title VII reverse discrimination claim).

sets the applicants brought to the table. The suggestion that the bare analysis offered somehow establishes a custom in hiring – presumably to suggest that it is the 'norm' that an initial declination results in an additional offer – is simply not supported.

There is no identity among the applicants, search committees or decision makers which would support even the barest hint of establishing a custom and practice. *If* there was a pattern of fifty-eight searches *by the same individual*, and one such search, for whatever reason, stood out like a sore thumb, it seems that Plaintiff's approach might have some vitality. But this is not that case.

While ostensibly offered as evidence of "custom in hiring process," Plaintiff's offer of this evidence, respectfully, fails to meet the basic threshold of being relevant. There is no evidence which links any of these searches to each other or to the decision in this case. If *Dean Seemann* had established a custom in hiring whereby he always went to the second person on the list or, even better for Plaintiff (Defendant supposes), always hired the number two choice if it was a woman, but never if it was a man, then there might be some probative value to the evidence.[2]

In this case, absent such identity of actors, such an an inference is, respectfully, a leap that defies logic. Again, if this evidence is admitted, it seems to behoove URI to litigate each of these fifty-nine searches to counter any inference which Plaintiff seeks to argue the jury should make.

C. <u>"Prior Acts of Gender Motivation."</u>

Plaintiff suggests that he will offer evidence related to other hires. These include allegations: that in one ***1991*** case, Dean Miller selected a 'lower ranked' female over a hire ranked male because of "affirmative action reasons,"; that in 2000, Dean Wright allegedly told the Search Committee that only a woman would be hired, with the result that a more qualified male was not recommended by

---

[2] Respectfully, the fact that in *one* other instance, Dean Seemann may have made an offer to a second individual after an initial decline is insufficient to establish a "custom" by any measure.

the Search Committee; and that, also in 2000, a Search which resulted in serial offers to the first (female), second (male) and then third (male) applicant listed on the Request to Fill was closed by the University Provost. Her reasoning included, according to Plaintiff, a need for diversity.

None of these scenarios lend any appropriate probative weight to any allegations of Plaintiff in *this* case. None of the individuals alleged to have favored women over men were involved, it appears, in this hiring decision. In effect, Plaintiff seeks to prove discrimination in his case based on alleged 'prior bad acts' *by different people*. Respectfully, there is no viable connection between the asserted facts and the claims in this case.

<u>GENERAL APPLICATION OF RULES OF EVIDENCE TO SPECIFIC MATTERS</u>

The anticipated evidence which Plaintiff seeks to introduce at the trial of this matter, as set forth above, suffers from a variety of infirmities and, respectfully, Defendant believes that it should be excluded.

Some similar issues were before the Court in an age discrimination case, *Haskell v. Kaman Corp.*, 743 F.2d 113 (2nd Cir. 1984), and the Court's analysis is, Defendant respectfully submits, applicable to this case. In *Haskell*, the district court admitted evidence related to the circumstances of the termination of various officers of the corporation over a ten year period. The district court allowed the evidence based upon its finding that it could "provide a circumstantial basis for an inference that the Company preferred younger employees..." 743 F.2d at 118. The Court of Appeals found that the evidence should have been excluded because: as a statistical sample, the number of instances offered was not statistically significant and, therefore, not relevant to the plaintiff's allegations (*Id.* at 121); and because it found that the "probative value of the testimony was so 'substantially outweighed by the danger of unfair prejudice' that it definitely should have been

excluded by the district court in accord with Fed.R.Evid. 403." *Id.* at 122. [3]

1. <u>The Proffered Evidence Is Not Relevant.</u>

As noted, much of the evidence simply is not relevant to the claims made in this case. It is virtually all unrelated, involving different actors, different searches and different facts. As such, pursuant to FRE 402, the evidence should be excluded.

2. <u>Even If Relevant, The Danger of Unfair Prejudice Outweighs the Probative Value.</u>

Even if this Court were to determine that the offered evidence had some conceivable probative value, Defendant respectfully submits that such probative value is far outweighed by the danger of unfair prejudice to URI if it is admitted. There is no factual or legal basis to criticize the actors in this search based upon unconnected acts of unrelated persons, even if those actions were discriminatory.

3. <u>The Proffered Evidence Would Confuse the Issues and Mislead the Jury.</u>

Further, the attempt to suggest that, because one person did something allegedly wrong somehow implies or supports the notion that someone else did likewise, which is about the only potential value this evidence could have, will both confuse the issues in the case and mislead the jury. Accordingly, this evidence should be excluded pursuant to Rule 403, Fed. R. Evid. Alternatively, and by analogy, the evidence could be excluded as trying to prove one bad act based on either prior bad acts or bad character, whether by the same actors or by others. Rule 404, Fed. R. Evid.

---

[3] "[E]ven the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant had laid him off because of his age." 743 F.2d at 122, *quoting Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 393 n. 4 (E.D.Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980).

4. Litigating the Unrelated 'Facts' Will Consume Inordinate Time on Corollary Issues.

Finally, if Plaintiff is permitted to introduce evidence of other, unrelated searches, Defendant will be bound, in each case, to confront that evidence to rebut both the substantive allegation and the resulting inference Plaintiff seeks to draw. Thus, if Plaintiff is permitted to follow this path, the journey will likely be a long one, all to the determination of what happened in unrelated searches. This potential expenditure of time on matters unrelated to at worst, and corollary to, at best, the events which lead to this litigation, should be excluded.

ADDITIONAL MATTERS SOUGHT TO BE EXCLUDED

A. Use of Surreptitious Tape.

Following the offer of the position to Dr. Bernhardt, Plaintiff surreptitiously taped (audio) an NRS Department meeting. At that meeting, the pending offer to Dr. Bernhardt was discussed and the desire to have her accept the offer. Defendants believe that the audiotape and a transcription should not be referred to or offered into evidence.

Dr. Gorres was present at the meeting and can testify as to his memory of who said what at the meeting, if otherwise admissible. To the extent that he refreshes his memory with such tape, Defendants may, or may not, refer to it. In addition, all of the attendees of the meeting are or were available to testify at deposition or trial. As such, the use of a surreptitiously recorded tape would not be appropriate except, perhaps, for purposes of impeaching direct testimony.

B. Stray Remarks/Ambiguous Statements.

Plaintiff may seek to introduce, in support of his claims, comments which are *favorable* to women as evidence of *disfavor* of men. Respectfully, these comments are not relevant to the issue of whether Dr. Gorres was discriminated against because he was a man.

In *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572 (1st Cir. 1999), the First Circuit

stated that innocuous statements do not constitute direct evidence of discrimination:

> Courts that take the classic position have contrasted direct evidence with, *inter alia*, ambiguous statements, and have indicated that the latter will not suffice (citations omitted). Courts that take either the animus plus or animus position place great emphasis on the strength of the proof of discriminatory animus (citations omitted). In our judgment, inherently ambiguous statements, without more, cannot supply the strong evidence that these courts rightfully demand as a prerequisite to mixed-motive analysis. We conclude, therefore, that a statement that plausibly can be interpreted two different ways - one discriminatory and the other benign - does not directly reflect illegal animus and, thus, does not constitute direct evidence.

*Fernandes*, 199 F.3d at 583 (citations omitted).

Since positive comments about women, in the context of an outstanding offer to a woman, can be interpreted as benign insofar as the question of whether a male applicant had been discriminated against, under the *Fernandes* case, they may not be considered to be evidence of discrimination. As such, they are not relevant to the proceedings. If admitted, in the context of this case, Defendant respectfully suggests that they would cause undue prejudice which would outweigh any marginal probative value which they might otherwise have.

## CONCLUSION

For the foregoing reasons, the University of Rhode Island respectfully prays that the Court make preliminary rulings excluding the evidence set forth above absent further foundation or other appropriate cause.

Respectfully submitted,
The Rhode Island Board of Governors for
Higher Education,
By its attorneys,

Date: March 9, 2007

/s/ Jeffrey S. Michaelson

Jeffrey S. Michaelson, Esq. (#3299)
Michaelson & Michaelson
P.O. Box 622
7454 Post Road
North Kingstown, R.I. 02852
Telephone: (401) 295-4330
Facsimile: (401) 295-5220

/s/ Timothy J. Dodd

Timothy J. Dodd, Esq. (#3150)
215 Broadway
Providence, R.I. 02903
Telephone: (401)272-3900
Facsimile: (401)331-1440

**CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing document was served through the Court's ECF system, on this 9 day of March, 2007, to the following attorney(s) of record:

David S. Cass
194 Waterman Street
Providence, R.I. 02906

/s/ Jeffrey S. Michaelson