**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

JOSEF GORRES

*vs.* C.A. No.: 04-319T

THE UNIVERSITY OF RHODE ISLAND and
THE RHODE ISLAND BOARD OF GOVERNORS
FOR HIGHER EDUCATION

# PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION IN LIMINE

The defendant, Board of Governors for Higher Education, has moved this Court to exclude four classifications of evidence that the plaintiff plans to offer at trial in the above captioned matter. These classifications of evidence are (1) documents relating to ADVANCE Grant, (2) a summary of documents that shows custom in hiring, (3) other incidents of discrimination, and (4) comments by defendants representatives that were recorded by the plaintiff.

Plaintiff asserts that the defendant's argument is without merit on each of these points. The defendant, by the presented motion in limine, is attempting to reduce this case to a divination of Dean Seamann's thought process without knowledge of the environment and circumstances that existed at the time of the determination n plaintiff's hire and in which Dean Seamann operated. Such a position regarding the proffered evidence is unrealistic and restricts the term relevant to an unworkable definition.

Plaintiff will address the classifications of evidence in turn and in the order presented by the defendant.

1. ADVANCE Grant

The defendants, in arguing restricting the evidence of the ADVANCE Grant, repeatedly assert that the plaintiff is arguing that the ADVANCE grant is evidence in and of itself of reverse discrimination. Plaintiff is not so asserting. Plaintiff asserts that the existence of the ADVANCE grant provides motivation, in the form of monetary compensation, for increasing the number of women in the science faculty at URI. Dean Seamann was well aware of the existence and specifics of the ADVANCE Grant, as he had written a letter in support thereof. Additionally, the existence of the ADVANCE Grant and the monetary gain, $3,500.00, to the University supports an inference that there was institutional pressure to change these statistics.

The defendant makes the barren and unsupportable assertion that "there is nothing in the ADVANCE grant which requires or encourages reverse discrimination." Defendant's Motion in Limine, p. 3. This assertion is directly contrary to the requirements of the ADVANCE Grant and the funding that it provides. It is for a jury to determine whether statistical increases in female faculty tied to financial gain for those increases supports a conclusion that this motivation coupled with the other evidence to be proffered was the reason for the defendant's failure to hire the plaintiff.

Defendant continues to rely on distinguishing evidence as direct evidence, purportedly to limit the plaintiff's ability to present a mixed motive action. This

continued effort is misplaced as *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) has eliminated the distinction.

The defendant attempts to move the goalposts a bit in shifting the supposed argument that plaintiff is making. Plaintiff makes no argument about the ADVACE Grant *per se*. Plaintiff only seeks to introduce the terms thereof as they relate to hiring in the sciences and the admitted support of the program by the decision maker in the hire at issue. As cited by the defendant, *Johnson v. Transportation Agency*, 480 U.S. 616 (1987) states that the existence of affirmative action programs are not *per se* discriminatory. Plaintiff makes no argument that any affirmative action program at the University is *per se* discriminatory. In fact, the ADVANCE Grant program is far different from any affirmative action program. Although the stated goals are similar and may even be viewed as admirable, the ADVANCE places monetary gain on its stated intent of changing the number of women in faculty positions in science, etc. Plaintiff is not aware of any affirmative action program addressed by the Courts in any framework presented by *Johnson* wherein the affirmative action program had monetary gain associated with the change in faculty makeup. It is this gain, tied to statistically supported changes in the gender makeup of the science faculty at URI that is relevant as motivation for gender discrimination.

2. Custom In Hiring

The defendant's argument seeks to isolate the hiring determination solely to the interior of Dean Seamann's head. The context in which the determination was made is relevant to an inquiry into whether the determination was discriminatory. What is sought to be introduced is a summary, per Fed.R.Evidence, Rule 1006, of the documents produced in discovery. Per requests for production and an order of this Court, the defendant turned over all documents relating to 78 position searches, those for comparable academic positions wherein the selected candidate was not hired, that occurred from January 2000 through the date of compliance.[1] Plaintiff has reviewed the documents and compiled two charts, one that subdivides the position searches by the results and role of the search committee in each position search and the other by the number of offers and number of qualified candidates. The graphs show that the vast majority of searches where there was more than one qualified candidate per the search committee were offered down the ranking order.

That Dean Seamann's actions were different in manner from almost all other similar circumstances within the University is relevant. The defendants want to limit the inquiry solely to his prior and subsequent hires. He does not exist in a vacuum; he exists within the University and is aware of the policies and manner of hiring within the

[1] Plaintiff's counsel has inquired whether there are any documents that exist and should have been turned over per the defendant's continuing duty to comply with discovery requests. Defendant's counsel has stated that there is nothing remaining to be produced.

University. His departure from the normal procedure is an appropriate inquiry and renders the summaries relevant.

3. Prior Acts of Gender Motivation

Again, the defendant seeks to bar anything specifically outside of Dean Seamann's head. Dean Seamann is not the defendant, the University of Rhode Island, by whatever name formality is required, is the defendant. It is the action of the University through Dean Seamann that is specifically at issue. However, the atmosphere and pressure that exist at the University are relevant and allow a jury to determine whether such pressure results in compliance. The acts sought to be introduces are not different from the circumstances of this matter except that the hiring occurred outside of Dean Seamann's rule. The other acts of discrimination sought to be introduced are similar to the facts of this case. In each case, there were no other women in the department at the time of the hiring process. In each case, there was institutional pressure, from the deans and/or administration, to use gender as a motivating and even determinative factor in the hiring process. In this instance, there were no women on the department, in this instance, the dean specifically spoke of the need to hire a woman and not have a bunch of white guys in the department. These prior acts are relevant in that they show that there does exist internal institutional pressure to hire women – to use gender as a factor, either motivating or determinative. The existence of such pressure can be established from the top down or

from the bottom up. In this case, there are sufficient similar incidents to proffer the relevant evidence to establish the institutional pressure from the ground up.

The defendant's reliance on *Haskell v. Kaman Corp.*, 743 F.2d 113 is misplaced. In *Haskell*, the Court ruled a parade of older employees testifying as to the reasons for there termination was inappropriate. In this matter, the proposed witnesses will testify to the inclusion of bias in the hiring process of others. This is not a parade of self-serving justification of ones own terminations. These witnesses are distinct from the bias that accompanies ones own termination. These are objective witnesses to the process and to direct statements of gender bias. This is not a statistical analysis of number of older employees terminated. By this difference, *Haskell* is inapposite to the case at hand.

4. <u>The "Surreptitious" Tape</u>

The defendant attacks this evidence on two grounds, the transcript itself and the content thereof. As to the transcript itself, it is a transcript of a department meeting in which the motivations for the hire of Dr. Bernhardt, and the lengths to which the administration was willing to go, were stated. The transcript was provided in discovery and the defendant has not taken any steps to contradict the content thereof. Although it is true that the plaintiff was present at the meeting. This does not preclude the introduction of the tape and therewith, the transcript. Additionally, with no position by the defendant that the transcript is not accurate, the transcript is a clearer and more concise manner for the jury to review the specific comments made at the meeting.

If this Court were to restrict the admission of the transcript, the specific statements that plaintiff seeks to produce through testimony are relevant and admissible. The defendant classifies these statements as "stray remarks" in seeking this Court's restriction. These statements were not stray remarks. As set forth in Plaintiff's Statement of Disputed Facts in opposition to the defendant's dispositive motions the remarks that were made by Dean Seamann were:

> We haven't indicated anything outside the ordinary (inaudible). We believe first of all that -- that a competitive university needs a spousal hire policy that would accommodate situations like this, and particularly, when we are in the process of trying to be extraordinarily competitive to hire a woman into this department. I cannot emphasize the importance of that. Not to use too many -- to hiring her and keeping her here.

and

> And I will also then reemphasize the issue of diversity here in hiring a woman for this department.
>
> * * *
>
> You can't -- I don't know why you have not been successful several times in a row, but you can't not be successful here. You really --- you can't. You can't ask for a tenured faculty with all white guys sitting around a table. You really can't, and I think – I don't have to tell you why.

These are not stray remarks. They are remarks made by the dean of the college while discussing the hiring of the prior candidate for the specific position for which plaintiff was considered. These statements were not just that having a woman in the department would be a bonus. The Dean stated that **could not** have a department that consisted of a bunch of white **guys** sitting around a table. These remarks are clear

evidence of the desperation in the intent of the Dean to hire and keep a woman in the position.

If this Court does entertain the label of "stray remarks for these comments, they would still be admissible. "[S]tray remarks may properly constitute evidence of discriminatory intent for the jury to consider in combination with other evidence." *McMillan v. Massachusetts Society, Prevention*, 140 F.3d 288, 300 (1st Cir. 1998). In the instant matter, there is other evidence that supports the admission of the specific remarks made by Dean Seamann.

Based on the foregoing, the proffered evidence is relevant and thereby admissible pursuant to Fed.R.Evidence, Rule 402. Similarly, the probative value of the evidence is not outweighed by any unfair prejudice. Equally, there is no risk that the evidence would confuse or mislead the jury. Thereby, Fed.R.Evidence, Rule 403 does not bar the evidence. Lastly, the proffered other acts of gender bias are do not address a "person's" character but support the existence of institutional policy and pressure that effects the hiring process entered into by the plaintiff.

Respectfully submitted:
JOSEF GORRES
By and through his attorney

/s/ David S. Cass

David S. Cass, #5044
194 Waterman Street
Providence, RI 02906
(401) 272-2627
Fax: (401) 272-2708